UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                              Case No. 19-15509-BKC-EPK

BRUCE STEVEN FRANK,                                 Chapter 11

     Debtor.
_____/

### DEBTOR'S MOTION TO APPROVE SETTLEMENT BETWEEN THE DEBTOR, JOYCE FRANK AND INVESTORS BANK

Bruce Steven Frank (the "Debtor"), by counsel, pursuant to Fed. R. Bankr. P. 9019 and Local Rule 9019-1, respectfully requests that the Court enter an order approving the Settlement Agreement between the Debtor, Joyce Frank ("J. Frank") and Investors Bank ("Investors") (collectively the "Parties"), attached hereto as Exhibit "A", and states as follows:

### Preliminary Statement

Investors obtained a pre-petition judgment against the Debtor in the amount of $3,158,046.46, on account of a guarantee of a claim against Rio Mall, LLC and Frank Investments, Inc.  Investors has alleged that its claim is non-dischargeable, pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).  Investors claimed that the Debtor improperly utilized rents received by Rio Mall, LLC for his own use and benefit.  The possibility of a non-dischargeable claim in this amount would have substantially damaged the Debtor's prospects for a successful reorganization.

After months of negotiations, the Debtor and Investors have agreed to the terms set forth in the Settlement Agreement attached hereto as Exhibit "A".  Essentially, Investors will be entitled to a non-dischargeable consent judgment in the amount of $300,000.00.  This judgment can be satisfied if the Debtor makes certain payments to Investors by certain dates, as set forth in the Settlement Agreement.  For example, if Investors receives the amount of $162,000.00 by September 30, 2020, then the consent judgment can be satisfied upon the

terms set forth in the Settlement Agreement. Furthermore, Investors will not be entitled to a general unsecured claim in this proceeding; its recovery will be limited to the consent judgment. As more fully set forth below, the Debtor believes that this settlement is in the best interest of the bankruptcy estate, falls well within the range of reasonableness, and should be approved by the Court.

## **Factual Background**

1.      On April 26, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. The Debtor is managing his affairs as Debtor in Possession and no trustee or statutory committee has been appointed.

2.      The Debtor held controlling interests in several companies involved in the motion picture theater industry, as well as ownership of commercial real properties. Most, if not all, of these companies are now defunct and many filed their own Chapter 11 bankruptcy proceedings.

3.      Prior to the Petition Date, the Debtor had an ownership interest in and was the managing member of Rio Mall, LLC.

4.      On or about February 28, 2019, the Superior Court of New Jersey in the proceeding styled *Investors Bank v. Rio Mall, LLC, Frank Investments, Inc. and Bruce S. Frank individually,* Case No. L-000105-18, entered a Consent Judgment against the Debtor, in favor of Investors, in the amount of $3,119,500.44.

5.      On or about May 21, 2019, Investors filed a proof of claim in the amount of $3,158,046.46 (the "Investors Claim") (Claim # 9-1). The amount of the Investors Claim reflects pre-petition interest accrued on the Consent Judgment. As of the date of this Motion, Investors has asserted that the balance due on the Investors Claim is $3,073,046.46 (that balance reflects an $85,000.00 payment received upon the sale, during this Chapter 11 case, of a house owned by the Debtor and his wife, J. Frank).

6.      Investors has claimed that the Debtor utilized the proceeds from rents received

by Rio Mall, LLC for his own use and benefit, rather than using the proceeds to pay Investors. As a result, Investors has claimed that the Debtor's actions constitute "larceny" and that the debt owed by the Debtor to Investors is non-dischargeable, pursuant to 11 U.S.C. § 523(a)(4). Investors also claims that the Debtor willfully and maliciously caused injury to Investors, and as a result, the debt owed by the Debtor to Investors is non-dischargeable, pursuant to 11 U.S.C. § 523(a)(6).

7.      The Debtor has denied these allegations and has recited certain alleged defenses to these claims.

8.      While Investors has commenced discovery as to the Debtor [*see* ECF No. 49], the Debtor and Investors have at the same time attempted to resolve their differences.

9.      The Debtor, J. Frank and Investors have ultimately agreed to resolve any and all issues relating to the Investors Claim, the non-dischargeability thereof, and this bankruptcy proceeding, in order to avoid the uncertainty and expense of litigation (the "Settlement"). Specifically, the Debtor, J. Frank and Investors have entered into the Settlement Agreement, which is attached hereto as Exhibit "A", subject to this Court's approval as requested herein.

## Primary Settlement Terms

10.      Pursuant to the Settlement Agreement, Investors shall receive, upon entry of an Order granting this Motion (the "Approval"), entry of a non-dischargeable agreed judgment against the Debtor in the amount of $300,000.00 (the "Judgment"), which shall bear interest at the federal judgment rate, and which shall be satisfied upon the payments set forth in ¶ 12 below.  A form of the Judgment to be entered is attached to the Settlement Agreement.

11.      Investors shall be granted "stay relief" pursuant to 11 U.S.C. § 362(d) in order to: (a) perfect its lien rights by filing and recording the Judgment; and (b) to exercise its levy and execution rights after January 1, 2021 if the Judgment has not otherwise been satisfied before that date in accordance with the terms of the Settlement.

12.      Pursuant to the Settlement Agreement, Investors is to be paid as follows:

a.      The Judgment shall be satisfied upon Investors' receipt of the payments as set forth in this ¶ 12.  An initial payment of $112,000.00 (the "Initial Payment") shall be disbursed by Dilworth Paxson LLP ("Investors' Attorney") to Investors no later than the next business day following the Approval.  The remaining balance of $188,000.00 shall be treated as follows: (i) if the Debtor makes payment to Investors in the amount of $50,000.00 (the "September Payment") on or before September 30, 2020, the remaining balance ($138,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment identified and defined in ¶ 12(d) below; alternatively (ii) if the September Payment is not made to Investors on or before September 30, 2020, the Debtor can pay $63,000.00 (the "November Payment") to Investors on or before November 15, 2020, the remaining balance ($125,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment; or alternatively, (iii) if neither the September Payment nor the November Payment is made to Investors on or before the date(s) indicated above, the Debtor can pay $75,000.00 (the "December Payment") to Investors on or before December 31, 2020, the remaining balance ($113,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment (these payments shall collectively be defined as the "Discount Payments").  Upon any of the Discount Payments having cleared, and upon payment of any required Larsen Payment, or the expiration of the time period described in ¶ 12(h) below, the Judgment will be satisfied, and Investors will execute and record an appropriate Satisfaction of Judgment.  If none of the Discount Payments are made, then Investors shall be entitled to exercise all rights and remedies available to it as the holder of the Judgment against the Debtor, subject to ¶ 12(c) below.

b.      The Initial Payment shall be comprised of a contribution from J. Frank in the amount of $112,000.00 (the "Deposit").

c.      If the Debtor timely makes any of the Discount Payments, then Investors will thereafter refrain from any post-judgment collection or execution remedies, and execution of the Judgment shall be expressly withheld, until payment of any required Larsen Payment, or the expiration of the time period described in ¶ 12(h) below, at which time the Judgment will be satisfied.  Furthermore, execution of the Judgment shall be expressly withheld until January 1, 2021, to allow for the Debtor to make any of the Discount Payments.

d.      In addition to the Discount Payments referenced above, the first $125,000.00 received or recovered (net, after payment of any of the Debtor's attorneys' fees and costs incurred in obtaining the Larsen Payment) by the Debtor (directly or indirectly, including to any relative or entity in which the Debtor has an interest) from Larsen Capital, LLC (directly or indirectly, including personally from Jeffrey Larsen or from any entity that Jeffrey Larsen has an interest) (collectively "Larsen"), for any reason whatsoever, including without limitation, collection of any judgment against Larsen or any settlement payment(s) from Larsen (the "Larsen Payment"), within three (3) years from the Approval date, shall be paid to Investors, upon receipt of same. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ 12(f) and ¶ 12(g) below.

e.      If any settlement is reached (within that three (3) year period) between the Debtor and Larsen for payment of a Larsen Payment within that three (3) year time period or thereafter, that Larsen Payment shall be paid to Investors upon receipt. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ 12(f) and ¶ 12(g) below. Investors agrees not to object to any settlement reached by and between the Debtor and Larsen, no matter the amount,  as long as the Debtor otherwise complies with this Settlement, that settlement with Larsen is reasonable under all then pertinent circumstances and was reached

in good faith. Debtor will keep Investors apprised of and shall promptly respond to any inquiries by Investors about the status of efforts by the Debtor and his counsel to obtain the Larsen Payment.

f.       If Larsen contributes $50,000.00 towards any Discount Payment, then: (i) $12,000 of that Larsen contribution for the September Payment shall not be applied as a Larsen Payment; (ii) $17,000.00 of that Larsen contribution for the November Payment shall not be applied as a Larsen Payment; and (iii) $22,000.00 of that Larsen contribution for the December Payment shall not be applied as a Larsen  Payment.

g.       If Larsen contributes any amount less than $50,000.00 towards any Discount Payment, then such payment(s) shall specifically be excluded from the Larsen Payment and applied to the Discount Payment by the following formula: 30% for any amount between $40,000.00 to $49,999.99; 27.5% for any amount between $30,000.00 to $39,999.99;  25% for any amount between $20,000.00 to $29,999.99;  22.5% for any amount between $10,000.00 to $19,999.99;  and 20% for any amount between $0.00 to $9,999.99.

h.       If one of the Discounts Payments has been paid and the Larsen Payments are received during the time periods specified in ¶ 12(e), then the remainder of the Judgment will be satisfied.  In such case, Investors shall fully release the Debtor from all residual claims relating to the Judgment.

i.       Effective upon the Approval, the Debtor hereby releases, acquits and forever discharges Investors and each, every and all of its current and past officers, directors, shareholders, affiliated corporations, subsidiaries, agents, employees, representatives, attorneys, predecessors, successors and assigns, of and from any and all claims, damages, causes of action, suits and costs, of whatever nature, character or description, whether known or unknown, anticipated or unanticipated (collectively the "Investors Released Parties"), which the Debtor has, may now have or may hereafter have or claim to have against any of the Investors Released Parties.

***13.       The foregoing overview of the Settlement Agreement is included here for summary purposes only and is not intended to constitute a full recitation of the terms of the Settlement Agreement.  Accordingly, review of the foregoing or this Motion should not be a substitute for review of the complete Settlement Agreement.***

14.       The Debtor believes that the Settlement is in the best interest of the estate and is fair and reasonable.

## Relief Requested and Analysis of *Justice Oaks* Factors

15.       As such, the Debtor respectfully requests that the Court approve the Settlement and the Settlement Agreement entered by and between the Debtor, J. Frank and Investors.

16.       The Court has broad discretion to approve a settlement or compromise, and it

should do so unless the proposed settlement falls below the lowest point in the range of reasonableness. *In re Bi-Coastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). The Eleventh Circuit has set forth the following factors that must be considered in determining whether to approve a settlement or compromise: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1548 (11th Cir. 1990), *cert. denied* 498 U.S. 959 (1990).

17.    **The Probability of Success in the Litigation.**   Specifically, with respect to factor (a), the Debtor has vehemently denied the allegations made by Investors with respect to the utilization of the rents received by Rio Mall, LLC (which filed its own Chapter 11 proceeding, Case No. 18-17840-BKC-EPK). However, the transactions that are the subject of Investors' claims are several years old, and the Debtor does not have immediate access to the records relating to such transactions. It would take a significant amount of time and cost a significant amount of money if the Debtor were to retrace all of the transactions made by Rio Mall, LLC during the pertinent time period. While Investors may have the resources to engage in protracted litigation regarding same, the Debtor does not have those resources.

18.    Additionally, Investors has alleged that its non-dischargeability claim is supported by information contained in Rio Mall, LLC's Statement of Financial Affairs, to the extent that some rents were allegedly used for the benefit of the Debtor. As a result, it is uncertain whether, despite the Debtor's denial of the allegations made by Investors, the Debtor would be able to see through protected litigation to successfully disprove such allegations.

19.    **The Difficulties to be Encountered in the Matter of Collection.**   As opposed to a claim belonging to the bankruptcy estate, the Settlement relates to a claim against the

Debtor.  However, it must be noted that if Investors were to receive a non-dischargeable judgment in the amount of the Investors Claim, the Debtor would have substantial difficulty proposing and following through with a successful Chapter 11 plan of reorganization, and/or repaying Investors.

20.    **The Complexity of the Litigation Involved.**  The next factor is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it. As stated above, the transactions that are the subject of Investors' claims are several years old, and the Debtor does not have immediate access to the records relating to such transactions.  It would take a significant amount of time and cost a significant amount of money if the Debtor were to retrace all of the transactions made by Rio Mall, LLC during the pertinent time period.

21.    Furthermore, the Debtor believes that he cannot reasonably propose a Chapter 11 plan of reorganization while the Investors Claim remains unresolved.  The Debtor would have a significant inability to repay creditors while at the same time having a substantial non-dischargeable claim in favor of Investors.  The Settlement allows for the Debtor to be able to propose a Chapter 11 plan of reorganization with a much greater degree of certainty regarding his financial situation.

22.    **The Paramount Interest of the Creditors**.  To begin, Investors is one of the Debtor's largest unsecured creditors.  By virtue of the Settlement, the Investors Claim is being reduced by over 90%.  Furthermore, such reduction will not negatively impact the other creditors of the bankruptcy estate.  In fact, such creditors will now be able to enjoy a greater distribution percentage than if the entire Investors Claim were an allowed general unsecured claim.

23.    In addition, and significantly, a large portion of the repayment of the Judgment (in the amount of $112,000.00) will be paid by J. Frank, a non-debtor.  While the Debtor will have to repay the remaining balance of the Judgment (subject to the discounts provided for

in the Settlement Agreement) from his future income, and potentially, property of the bankruptcy estate, the end result is much more favorable for the other creditors of this bankruptcy proceeding.

24.     In addition, the Debtor submits that the other creditors of this bankruptcy proceeding will be significantly better off in a Chapter 11 reorganization, which will be made possible by virtue of the Settlement, than in a Chapter 7 liquidation, which would be more likely in the event that the Investors Claim were not resolved as set forth in the Settlement Agreement.

25.     Accordingly, based upon an analysis of all of the factors set forth above, the Debtor believes that the Settlement is in the best interest of the bankruptcy estate and the creditors.

26.     As such, the Debtor respectfully requests that the Court approve the Settlement.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order approving the Settlement by and between the Debtor, J. Frank and Investors, in the form set forth in the attached Exhibit "B", and approving the Settlement Agreement attached hereto as Exhibit "A", and granting such other and further relief as the Court deems just and proper.

Dated:  April 16, 2020

LEIDERMAN SHELOMITH ALEXANDER
+ SOMODEVILLA, PLLC.
Attorneys for the Debtor
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By:_____/s/_____
        ZACH B. SHELOMITH
        Florida Bar No. 0122548
        zbs@lsaslaw.com

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (hereinafter, the "Settlement") is made and entered into by and between Bruce Steven Frank (the "Debtor"), Joyce Frank ("J. Frank") and Investors Bank ("Investors"). The parties to this Settlement are collectively referred to as the "Parties" or singularly as "Party."

## RECITALS

A.      On or about April 26, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), which case is captioned as *In re Bruce Steven Frank.*, Case No. 19-15509-BKC-EPK (the "Bankruptcy").

B.      Prior to the Petition Date, the Debtor had an ownership interest in and was the managing member of Rio Mall, LLC ("Rio Mall").

C.      On or about February 28, 2019, the Superior Court of New Jersey in the proceeding titled *Investors Bank v. Rio Mall, LLC, Frank Investments, Inc., and Bruce S. Frank individually*; Case No. L-000105-18, entered a Consent Judgment against the Debtor in favor of Investors for $3,119,500.44.

D.      On or about May 21, 2019, Investors filed a proof of claim in the Bankruptcy in the amount of $3,158,046.46; the amount includes interest on the Consent Judgment. (the "Investors Claim").  As of the date of this Settlement, Investors calculates the balance of the Investors Claim as $3,073,046.46 (after application of money received from the Bankruptcy Court approved sale of a house owned by the Debtor and J. Frank).

E.      Investors has claimed that the Debtor utilized rents received by Rio Mall, LLC for his own use and benefit, rather than using the rents to pay Investors or other expenses relating to the operation of the Rio Mall.  As a result, Investors has claimed, *inter alia*, that the Debtor's actions constitute "larceny" and that the debt owed by the Debtor to Investors is non-dischargeable, pursuant to 11 U.S.C. § 523(a)(4).  Investors also claims that the Debtor willfully and maliciously caused injury to Investors, and as a result, the debt owed by the Debtor to Investors is non-dischargeable, pursuant to 11 U.S.C. § 523(a)(6).  The Debtor has denied these allegations and has recited certain alleged defenses to these claims.

F.      The Debtor, J. Frank and Investors have exchanged documentation in support of their respective positions and have otherwise negotiated in good faith to reach this Settlement.

NOW, THEREFORE, in consideration of the foregoing facts and the terms, conditions, agreements, representations and covenants set forth herein, the Parties agree as follows:

## AGREEMENT

1.  <u>Approval</u>.   The Parties acknowledge and agree that this Settlement is subject to the approval of the Bankruptcy Court (the "Approval").  The Settlement will be binding upon all Parties upon execution by all Parties.  However, the Settlement shall automatically terminate if the Approval is not obtained by May 15, 2020, unless the Parties mutually agree to extend that deadline. Upon termination, the Parties shall then be entitled to exercise all of their respective rights and remedies. If the Approval is granted, the terms of this Settlement shall survive conversion of the Bankruptcy to another chapter or dismissal of the Bankruptcy.

2.  <u>Judgment</u>.   Investors shall receive, upon entry of the Approval, entry of a non-dischargeable agreed judgment against the Debtor in the amount of $300,000.00 (the "Judgment"), which shall bear interest at the federal judgment rate, and which shall be satisfied upon the payments set forth in ¶ 3 below. Attached as Exhibit "A" is the form of the Judgment to be entered.  Investors shall be granted "stay relief" pursuant to 11 U.S.C. § 362(d) in order to: (a) perfect its lien rights by filing and recording the Judgment; and (b) to exercise its levy and execution rights after January 1, 2021 if the Judgment has not otherwise been satisfied before that date in accordance with the terms of this Settlement.

3.  <u>Payment to Investors</u>.

    (a). The Judgment shall be satisfied upon Investors' receipt of the payments as set forth in this ¶ 3.  An initial payment of $112,000.00 (the "Initial Payment") shall be disbursed by Dilworth Paxson LLP ("Investors' Attorney") to Investors no later than the next business day following the Approval.  The remaining balance of $188,000.00 shall be treated as follows: (i) if the Debtor makes payment to Investors in the amount of $50,000.00 (the "September Payment") on or before September 30, 2020, the remaining balance ($138,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment identified and defined in ¶ 3(d) below; alternatively (ii) if the September Payment is not made to Investors on or before September 30, 2020, the Debtor can pay $63,000.00 (the "November Payment") to Investors on or before November 15, 2020, the remaining balance ($125,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment; or alternatively, (iii) if neither the September Payment nor the November Payment is made to Investors on or before the date(s) indicated above, the Debtor can pay $75,000.00 (the "December Payment") to Investors on or before December 31, 2020, the remaining balance ($113,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment (these payments shall collectively be defined as the "Discount Payments"). Upon any of the Discount Payments having cleared, and upon payment of any required Larsen Payment, or the expiration of the time period described in ¶ 3(h) below, the Judgment will be satisfied, and Investors will execute and record an appropriate Satisfaction of Judgment.  If none of the Discount Payments are made, then Investors shall be entitled to exercise all rights and remedies available to it as the holder of the Judgment against the Debtor, subject to ¶ 3(c) below.

    (b).   The Initial Payment shall be comprised of a contribution from J. Frank in the amount of $112,000.00 (the "Deposit"). The Deposit is being remitted to the

Exhibit "A"

Escrow Agent (defined in ¶4(a) below) simultaneously with execution of this Settlement Agreement by J. Frank. The Deposit shall be held by the Escrow Agent and disbursed in accordance with this Settlement Agreement.

(c). If the Debtor timely makes any of the Discount Payments, then Investors will thereafter refrain from any post-judgment collection or execution remedies, and execution of the Judgment shall be expressly withheld, until payment of any required Larsen Payment, or the expiration of the time period described in ¶ 3(h) below, at which time the Judgment will be satisfied.  Furthermore, execution of the Judgment shall be expressly withheld until January 1, 2021, to allow for the Debtor to make any of the Discount Payments.

(d). In addition to the Discount Payments referenced above, the first $125,000.00  received or recovered (net, after payment of any of the Debtor's attorneys' fees and costs incurred in obtaining the Larsen Payment) by the Debtor (directly or indirectly, including to any relative or entity in which the Debtor has an interest) from Larsen Capital, LLC (directly or indirectly, including personally from Jeffrey Larsen or from any entity that Jeffrey Larsen has an interest) (collectively "Larsen"), for any reason whatsoever, including without limitation, collection of any judgment against Larsen or any settlement payment(s) from Larsen (the "Larsen Payment"), within three (3) years from the Approval date, shall be paid to Investors, upon receipt of same. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ 3(f) and ¶ 3(g) below.

(e). If any settlement is reached (within that three (3) year period) between the Debtor and Larsen for payment of a Larsen Payment within that three (3) year time period or thereafter, that Larsen Payment shall be paid to Investors upon receipt. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ 3(f) and ¶ 3(g) below.  Investors agrees not to object to any settlement reached by and between the Debtor and Larsen, no matter the amount,  as long as the Debtor otherwise complies with this Settlement, that settlement with Larsen is reasonable under all then pertinent circumstances and was reached in good faith. Debtor will keep Investors apprised of and shall promptly respond to any inquiries by Investors about the status of efforts by the Debtor and his counsel to obtain the Larsen Payment.

(f). If Larsen contributes $50,000.00 towards any Discount Payment, then: (i) $12,000 of that Larsen contribution for the September Payment shall not be applied as a Larsen Payment; (ii) $17,000.00 of that Larsen contribution for the November Payment shall not be applied as a Larsen Payment; and (iii) $22,000.00 of that Larsen contribution for the December Payment shall not be applied as a Larsen Payment.

(g). If Larsen contributes any amount less than $50,000.00 towards any Discount Payment, then such payment(s) shall specifically be excluded from the Larsen Payment and applied to the Discount Payment by the following formula: 30% for any amount between $40,000.00 to $49,999.99; 27.5% for any amount between $30,000.00 to $39,999.99;  25% for any amount between $20,000.00 to $29,999.99;  22.5% for any amount between $10,000.00 to $19,999.99;  and 20% for any amount between $0.00 to $9,999.99.

(h).   If one of the Discounts Payments has been paid and the Larsen Payments are received during the time periods specified in ¶ 3(e), then the remainder of the Judgment will be satisfied.  In such case, Investors shall fully release the Debtor from all residual claims relating to the Judgment.

(i).   Effective upon the Approval, the Debtor hereby releases, acquits and forever discharges Investors and each, every and all of its current and past officers, directors, shareholders, affiliated corporations, subsidiaries, agents, employees, representatives, attorneys, predecessors, successors and assigns, of and from any and all claims, damages, causes of action, suits and costs, of whatever nature, character or description, whether known or unknown, anticipated or unanticipated (collectively the "Investors Released Parties"), which the Debtor has, may now have or may hereafter have or claim to have against any of the Investors Released Parties.

4.    Escrow Agent.

(a).   The Deposit shall be held and controlled, as specified in this Agreement, by Dilworth Paxson LLP (the "Escrow Agent").  It is understood and agreed that the Escrow Agent shall promptly, upon receipt by it, place the Deposit in a non-interest bearing IOTLA account.  Escrow Agent need not establish a separate account for this purpose.

(b).   The Parties hereto acknowledge that, under the terms of this Agreement, J. Frank has the right to receive a refund of the Deposit upon termination of this Agreement by written notice to Escrow Agent, or upon entry of an order by the Bankruptcy Court disapproving this Settlement.  Upon termination of this Agreement in accordance with the terms hereof and notice to the Escrow Agent, the Escrow Agent shall be and is hereby authorized and directed to disburse the Deposit, in accordance with the provisions of this Agreement relating to such termination, without the need for any consent or joinder or other instructions from any Party, on the day that is ten (10) days after receipt of a notice of termination given by any Party.

(c).   The duties of Escrow Agent are only as herein specifically provided and are purely ministerial in nature. Escrow Agent shall incur no liability whatever except for willful misconduct or gross negligence, as long as Escrow Agent has acted in good faith. Each of the Parties hereby release and indemnify Escrow Agent from and against any act done or omitted to be done by Escrow Agent in good faith in the performance of its duties hereunder, except to the extent such act constitutes willful misconduct or gross negligence.

(d).   Escrow Agent is acting as a stakeholder only with respect to the Deposit. If there is any dispute as to whether Escrow Agent is obligated to deliver the Deposit or as to whom the Deposit is to be delivered, Escrow Agent shall not be required to make any delivery, but in such event Escrow Agent may hold the same until receipt by Escrow Agent of an authorization in writing, signed by all of the Parties having any interest in such dispute, directing the disposition of the Deposit or until the final determination of the rights of the parties in an appropriate proceeding. If such written authorization is not given, or proceedings for such determination are not begun within thirty (30) days after Approval or termination of this Agreement, Escrow Agent may, but is not required to, bring an appropriate action or proceeding for leave to

deposit the Deposit in the Bankruptcy Court having jurisdiction over the Bankruptcy. Escrow Agent shall be reimbursed for all reasonable out-of-pocket costs and expenses (plus, without limitation, reasonable attorneys' fees and disbursements) of such action or proceeding by Debtor, and/or J. Frank, as allocated by the Bankruptcy Court. Upon making delivery of the Deposit in the manner provided in this Agreement, Escrow Agent shall have no further liability hereunder or to any of the Parties.

(e).   Dilworth Paxson LLP is acting as the Escrow Agent hereunder as an accommodation to the parties and nothing herein shall prevent Dilworth Paxson LLP from representing Investors in connection with any matter, including without limitation, any dispute between the Parties, the rights and remedies of Investors against any of the other Parties to this Agreement, or any matter arising under this Agreement. The Parties, by execution hereof, waive and release any claim asserting any theory that would interfere with or prevent Dilworth Paxson LLP from so representing Investors.

5.   <u>Treatment in Chapter 11 Plan</u>.   Upon timely receipt by Investors of the Initial Payment and the Approval of this Settlement: (a) Investors will not seek the dismissal or conversion of the Bankruptcy; (b) Investors shall vote in favor of confirmation of the Chapter 11 Plan, or any amended Chapter 11 Plan, so long as such Plan provides for the payment to Investors as set forth in ¶¶ 2 and 3; (c) Investors shall not object to the Debtor's discharge in the Bankruptcy; (d) Investors shall file a ballot voting to accept the Debtor's Chapter 11 Plan, or any amended Chapter 11 Plan, so long as such Plan provides for the payments to Investors as set forth in ¶¶ 2 and 3; and (e) Investors shall only be entitled to the payments set forth in ¶¶ 2 and 3 above and is not entitled to any additional payment as a general unsecured creditor.

6.   <u>Authority</u>.   Each Party signing this Settlement, and any other documents executed in connection with this Settlement, whether signed individually or on behalf of any person or entity, warrants and represents that he or she has full authority to so execute this Settlement on behalf of the Parties on whose behalf he or she so signs. Each Party signing this Settlement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Settlement and shall survive execution of this Settlement.

7.   <u>Entire Agreement.</u>   This Settlement contains the entire understanding and agreement between and among the Parties hereto with respect to the matters referred to herein. No other representations, covenants, undertakings or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, shall be deemed in any way to exist or bind any of the Parties hereto.  The Parties hereto acknowledge that each Party has not executed this Settlement in reliance on any such promise, representation or warranty not expressly contained in the Settlement.

8.   <u>Binding on Successors, Assigns and Others.</u>   This Settlement and the covenants and conditions contained herein shall apply to, be binding upon and inure to the heirs, executors, administrators, conservators, Debtors, agents, legal representatives, successors, transferees and assigns of the Parties hereto.

9.   <u>Advice of Counsel.</u>   The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the

execution of this Settlement and that they have read this Settlement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Settlement, and each Party has had it fully explained to them by their counsel and understands the terms and provisions of this Settlement and its nature and effect.  Each Party further represents that they are entering into this Settlement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on representation of any other Party or of counsel for any other Party.

      10.    <u>Attorneys' Fees and Costs</u>.  The Parties understand and agree that each Party shall bear their own respective attorneys' fees and costs and neither Party shall have any further monetary claims against the other.

      11.    <u>Counterparts and Facsimiles.</u>  This Settlement may be executed in multiple counterparts, each of which shall be deemed an original Settlement, and all of which shall constitute one agreement.  Any signature in counterpart provided via email or facsimile on this Settlement shall be deemed an original signature.

      12.    <u>Further Assurances.</u>  The Parties shall execute and deliver all documents and perform all further acts that may be reasonably necessary to effectuate the purpose and provisions of this Settlement.

      13.    <u>Meaning of Pronouns and Effect of Headings.</u>  As used in this Settlement and attached exhibits, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires.  The captions and paragraph headings in this Settlement are inserted solely for convenience or reference and shall not restrict, limit, or otherwise affect the meaning of the Parties' agreement.

      14.    <u>Recitals</u>.  The foregoing recitals are true and correct and incorporated herein as if fully set forth herein.

      15.    <u>Construction.</u>  This Settlement shall be construed as if the Parties jointly participated in the preparation of this Settlement and any uncertainty and/or ambiguity shall not be interpreted against any one Party.

      16.    <u>Jurisdiction</u>.  The Parties agree to the Bankruptcy Court retaining jurisdiction over them and over the cause for the purpose of enforcing the terms and covenants contained within this Settlement.

      17.    <u>Time is of the Essence.</u>  Time is of the essence for all dates and deadlines set forth in this Agreement and none can be extended or waived except upon mutual written agreement of all Parties.

**[SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, the Parties have signed this Settlement Agreement on the date(s) indicated with their respective signatures.

| | Investors Bank |
|---|---|
| _Bruce Steven Frank_ | By: _____ |
| Dated: _4/13/20_ | |
| | _____ |
| | (Print Name) |
| _Joyce Frank_ | as _____ |
| Dated: _4-/3-20-20_ | (Position) |
| | Dated: _____ |

The undersigned, Investors' Attorney, executes this Agreement for the purpose of indicating its agreement to serve as the Escrow Agent, and to receive and disburse the Deposit, as provided herein.

Dilworth Paxson LLP

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the Parties have signed this Settlement Agreement on the date(s) indicated with their respective signatures.

| | Investors Bank |
|---|---|
| _____ | By: _Andrew Rohmeyer_ _Digitally signed by Andrew Rohmeyer Date: 2020.04.13 15:25:22 -04'00'_ |
| Bruce Steven Frank | |
| | **Andrew Rohmeyer** |
| Dated: _____ | _____ |
| | (Print Name) |
| | as **Vice President** |
| _____ | _____ |
| Joyce Frank | (Position) |
| | Dated: **4/13/2020** |
| Dated: _____ | _____ |

The undersigned, Investors' Attorney, executes this Agreement for the purpose of indicating its agreement to serve as the Escrow Agent, and to receive and disburse the Deposit, as provided herein.

Dilworth Paxson LLP

By: _____
Name:_____
Title: _____

Exhibit "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                              Case No. 19-15509-BKC-EPK

BRUCE STEVEN FRANK,                                 Chapter 11

        Debtor.
_____/

## AGREED JUDGMENT AGAINST BRUCE STEVEN FRANK

THIS CAUSE came before the Court upon the Settlement Agreement by and between Bruce Steven Frank (the "Debtor"), Joyce Frank ("J. Frank") and Investors Bank ("Investors Bank"), which is attached as Exhibit "A" to the Motion to Approve Settlement Between the Debtor, Joyce Frank and Investors Bank [ECF No. ___] (the "Motion to Approve Settlement"), which was granted by the Court on _____ [ECF No. ___] (the "Order Granting Motion to Approve Settlement"). The Court, having noted the agreement between the Debtor, J. Frank and Investors Bank as to the entry of this Agreed Judgment, and being otherwise duly advised in the

premises,

**ORDERS AND ADJUDGES** as follows:

1.      Final Judgment is entered in favor of Investors Bank and against Debtor.

2.      Investors Bank, located at 101 JFK Parkway, Short Hills, NJ 07078, shall recover from Debtor, Bruce Steven Frank, whose address is 183 Golf Village Blvd, Jupiter, FL 33458, and whose last four numbers of his social security number are _____, the principal sum of $300,000.00, which shall bear interest at the federal judgment rate, for which all of the above is non-dischargeable in the above-referenced bankruptcy proceeding and any subsequent bankruptcy proceeding.

3.      Execution of this Judgment shall be withheld until January 1, 2021, in accordance with the Settlement Agreement and the Order Granting Motion to Approve Settlement.

4.      Investors Bank shall have immediate relief from the automatic stay, pursuant to 11 U.S.C. § 362(d) in order to: (a) immediately perfect its lien rights by filing and recording this Judgment; and (b) after January 1, 2021, to exercise its levy and execution rights if this Judgment has not otherwise been satisfied before that date in accordance with the terms of the Settlement Agreement and the Order Granting Motion to Approve Settlement.

5.      This Judgment may be satisfied if Debtor specifically complies with the payment obligations set forth in the Settlement Agreement and the Order Granting Motion to Approve Settlement.

6.      The Debtor and Investors Bank shall comply with all of the terms set forth in the Settlement Agreement and the Order Granting Motion to Approve Settlement.

7. This Court shall retain jurisdiction to enforce this Judgment and to determine any issues or controversies related thereto, and/or with regard to the Settlement Agreement and the Order Granting Motion to Approve Settlement.

###

**Submitted by:**

Gary M. Freedman, Esq.
Nelson Mullins Broad and Cassel
One Biscayne Tower, 21st Floor
2 S. Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-9449
Facsimile: (305) 373-9443
gary.freedman@nelsonmullins.com

**Copies furnished to:**

Gary M. Freedman, Esq.

Attorney Freedman is directed to serve copies of this order on all interested parties and to file a certificate of service.

# EXHIBIT "B" – PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                          Case No. 19-15509-BKC-EPK

BRUCE STEVEN FRANK,                             Chapter 11

    Debtor.
_____/

## ORDER GRANTING DEBTOR'S MOTION TO APPROVE SETTLEMENT BETWEEN THE DEBTOR, JOYCE FRANK AND INVESTORS BANK

THIS CAUSE came on before the Court on _____ at _____, upon the Debtor's Motion to Approve Settlement Between the Debtor, Joyce Frank and Investors Bank [ECF No. ___] (the "Motion").  The Court, having considered the Motion and the file, hearing arguments of counsel, and for the reasons stated on the record, finds good cause to grant the Motion, as set forth below.  Accordingly, the Court –

ORDERS as follows:

1.       The Motion is GRANTED.

2.        The Settlement (as defined in the Motion[1]) between Bruce Steven Frank (the

---

[1] Any capitalized terms not defined herein shall have the same definition and meaning as set forth in the Motion and/or the Settlement Agreement.

"Debtor"), Joyce Frank ("J. Frank") and Investors Bank ("Investors") (collectively the "Parties"), as described in the Motion, is approved.

3.      The Settlement Agreement entered into by and between the Parties is approved.

4.      The Court will enter, by separate judgment, a non-dischargeable agreed judgment against the Debtor, and in favor of Investors, in the amount of $300,000.00 (the "Judgment"), which shall bear interest at the federal judgment rate, and which shall be satisfied upon the payments set forth in ¶ 5 below.

5.      Pursuant to the Settlement Agreement, Investors is to be paid as follows:

a.      The Judgment shall be satisfied upon Investors' receipt of the payments as set forth in this ¶ 5.  An initial payment of $112,000.00 (the "Initial Payment") shall be disbursed by Dilworth Paxson LLP ("Investors' Attorney") to Investors no later than the next business day following the entry of this Order.  The remaining balance of $188,000.00 shall be treated as follows: (i) if the Debtor makes payment to Investors in the amount of $50,000.00 (the "September Payment") on or before September 30, 2020, the remaining balance ($138,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment identified and defined in ¶ 5(d) below; alternatively (ii) if the September Payment is not made to Investors on or before September 30, 2020, the Debtor can pay $63,000.00 (the "November Payment") to Investors on or before November 15, 2020, the remaining balance ($125,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment; or alternatively, (iii) if neither the September Payment nor the November Payment is made to Investors on or before the date(s) indicated above, the Debtor can pay $75,000.00 (the "December Payment") to Investors on or before December 31, 2020, the remaining balance ($113,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment (these payments shall collectively be defined as the "Discount Payments").  Upon any of the Discount Payments having cleared, and upon payment of any required Larsen Payment, or the expiration of the time period described in ¶ 5(h) below, the Judgment will be satisfied, and Investors will execute and record an appropriate Satisfaction of Judgment.  If none of the Discount Payments are made, then Investors shall be entitled to exercise all rights and remedies available to it as the holder of the Judgment against the Debtor, subject to ¶ 5(c) below.

b.      The Initial Payment shall be comprised of a contribution from J. Frank in the amount of $112,000.00 (the "Deposit").

c.      If the Debtor timely makes any of the Discount Payments, then Investors shall thereafter refrain from any post-judgment collection or execution remedies, and execution of the Judgment shall be expressly withheld, until payment of any required Larsen Payment, or the expiration of the time period described in ¶ 5(h) below, at which time the Judgment will be satisfied.  Furthermore, execution of the Judgment shall be expressly withheld until January 1, 2021, to allow for the Debtor to make any of the Discount Payments.

d.      In addition to the Discount Payments referenced above, the first $125,000.00

received or recovered (net, after payment of any of the Debtor's attorneys' fees and costs incurred in obtaining the Larsen Payment) by the Debtor (directly or indirectly, including to any relative or entity in which the Debtor has an interest) from Larsen Capital, LLC (directly or indirectly, including personally from Jeffrey Larsen or from any entity that Jeffrey Larsen has an interest) (collectively "Larsen"), for any reason whatsoever, including without limitation, collection of any judgment against Larsen or any settlement payment(s) from Larsen (the "Larsen Payment"), within three (3) years from the Approval date, shall be paid to Investors, upon receipt of same. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ 5(f) and ¶ 5(g) below.

e.      If any settlement is reached (within that three (3) year period) between the Debtor and Larsen for payment of a Larsen Payment within that three (3) year time period or thereafter, that Larsen Payment shall be paid to Investors upon receipt. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ 5(f) and ¶ 5(g) below.  Investors agrees not to object to any settlement reached by and between the Debtor and Larsen, no matter the amount,  as long as the Debtor otherwise complies with this Settlement, that settlement with Larsen is reasonable under all then pertinent circumstances and was reached in good faith. Debtor will keep Investors apprised of and shall promptly respond to any inquiries by Investors about the status of efforts by the Debtor and his counsel to obtain the Larsen Payment.

f.      If Larsen contributes $50,000.00 towards any Discount Payment, then: (i) $12,000 of that Larsen contribution for the September Payment shall not be applied as a Larsen Payment; (ii) $17,000.00 of that Larsen contribution for the November Payment shall not be applied as a Larsen Payment; and (iii) $22,000.00 of that Larsen contribution for the December Payment shall not be applied as a Larsen  Payment.

g.      If Larsen contributes any amount less than $50,000.00 towards any Discount Payment, then such payment(s) shall specifically be excluded from the Larsen Payment and applied to the Discount Payment by the following formula: 30% for any amount between $40,000.00 to $49,999.99; 27.5% for any amount between $30,000.00 to $39,999.99;  25% for any amount between $20,000.00 to $29,999.99;  22.5% for any amount between $10,000.00 to $19,999.99;  and 20% for any amount between $0.00 to $9,999.99.

h.      If one of the Discounts Payments has been paid and the Larsen Payments are received during the time periods specified in ¶ 5(e), then the remainder of the Judgment will be satisfied.  In such case, Investors shall fully release the Debtor from all residual claims relating to the Judgment.

i.      Effective upon the Approval, the Debtor hereby releases, acquits and forever discharges Investors and each, every and all of its current and past officers, directors, shareholders, affiliated corporations, subsidiaries, agents, employees, representatives, attorneys, predecessors, successors and assigns, of and from any and all claims, damages, causes of action, suits and costs, of whatever nature, character or description, whether known or unknown, anticipated or unanticipated (collectively the "Investors Released Parties"), which the Debtor has, may now have or may hereafter have or claim to have against any of the Investors Released Parties.

6.      Investors Bank is hereby granted  relief from the automatic stay, pursuant to

11 U.S.C. § 362(d) in order to: (a) perfect its lien rights by filing and recording the Judgment;

and (b) to exercise its levy and execution rights after January 1, 2021 if the Judgment has not

otherwise been satisfied before that date in accordance with the terms of the Settlement Agreement and this Order.

7.      Time is of the essence for all payment and other deadlines set forth in ¶ 5 of this Order, the Settlement Agreement and the Judgment.

8.      All of the other terms of the Settlement Agreement not specifically provided for herein are approved, and the Debtor, J. Frank and Investors Bank shall comply with all of the terms set forth in the Settlement Agreement.

9.      This Court shall retain jurisdiction to enforce the Judgment and/or the terms of the Settlement, and to determine any issues or controversies related thereto, and/or with regard to the Settlement Agreement and this Order.

### 

**Submitted by:**

Zach B. Shelomith, Esq.
Leiderman Shelomith Alexander +
Somodevilla, PLLC
2699 Stirling Road, Suite C401
Ft. Lauderdale, FL 33312
Telephone (954) 920-5355
Facsimile (954) 920-5371
zbs@lsaslaw.com

**Copies furnished to:**

Zach B. Shelomith, Esq.

Attorney Shelomith is directed to serve copies of this order on all creditors and interested parties and to file a certificate of service.