UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                              Case No. 19-15509-BKC-EPK

BRUCE STEVEN FRANK,                                 Chapter 11

     Debtor.
_____/

## PLAN OF REORGANIZATION OF BRUCE STEVEN FRANK

**Submitted on April 21, 2020 by:**

ZACH B. SHELOMITH, ESQ.
zbs@lsaslaw.com
Florida Bar No. 0122548
LEIDERMAN SHELOMITH ALEXANDER +
SOMODEVILLA, PLLC
Attorneys for the Debtor
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Bruce Steven Frank (the "Debtor") from the following sources: (a) the Debtor's income from his employment with J Frank Consulting, LLC ("JFC"), an entity owned solely by the Debtor's non-filing spouse, Joyce Frank; and (b) the Additional Non-Exempt Funds, defined in ¶ 3.02 below.

This Plan provides for 4 classes of secured claims, 2 classes of unsecured priority claims, 2 classes of general unsecured claims and 1 class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately 0.7842 cents on the dollar. This Plan also provides for the payment of administrative claims in full on the Effective Date of this Plan, or upon such other terms as agreed to between the Debtor and the administrative claimant(s).

All creditors and equity security holders should refer to Articles II through V of this Plan for information regarding the precise treatment of their claim. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

2.01  <u>Unclassified Claims</u>.  Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes. However, treatment of any administrative expense claims that are not paid in full on the Effective Date of this Plan is set forth below.

2.02  <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. <u>The Debtor requests that the Court set an administrative claims bar date of fifteen (15) days after the date of confirmation of this Plan, unless an earlier date has been set by the Court</u>.

2.03  <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid either in full on the Effective Date of this Plan, or over a term of sixty (60) months from the Petition Date, as further set forth below.

2.04  <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of this Plan, within fourteen (14) business days of entry of Order confirming this Plan. The Reorganized Debtor will file with

the Bankruptcy Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.01    Claims and interests shall be treated as follows under this Plan:

Classified Claims:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Unsecured Priority Claim of the State of New Jersey – Division of Taxation Bankruptcy (Claim # 31) **Total priority claim amount: $214,740.71** | Unimpaired | Class 1, the Unsecured Priority Claim of the State of New Jersey – Division of Taxation Bankruptcy (the "State of New Jersey"), in the amount of $214,740.71, is unimpaired by this Plan. The Debtor disputes the correct amount of the State of New Jersey's claim, and has filed an Objection to Claim [ECF No. 179], in order to establish the correct amount of the allowed unsecured priority claim, which remains pending. The State of New Jersey will be paid in full (the full amount of its allowed unsecured priority claim), plus statutory interest, over 60 months from the Petition Date, in equal quarterly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter thereafter. The amount due to the State of New Jersey may be reduced during the Plan Period by any payment on account of any Additional Non-Exempt Funds, as described in ¶ 3.02 below. |
| Class 2 – Other Priority Claims | Unimpaired | Other than set forth above, no other undisputed, non-contingent and liquidated priority claims of a known amount have been scheduled by the Debtor, no other priority claims have been filed by any creditor, and the Debtor does not believe that any other priority claims exist. However, in the event that it is determined by the Court that any additional priority claims do exist, then each holder of a Class 2 Priority Claim will be paid in full, over 60 months from the Effective Date, in 20 equal quarterly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter thereafter. |
| Class 3A – Secured Claim of Professional Bank (first mortgage on real property) (Claim # 24) | Unimpaired | Class 3A, the Secured Claim of Professional Bank (first mortgage on real property), is unimpaired by this Plan. This claim was secured by the real property located at 392 Eagle Dr, Jupiter, FL 33477 (the "Eagle Drive Property"), which was owned by the Debtor and his non-filing spouse, Joyce Frank ("Joyce"). The Eagle Drive Property was sold (the "Eagle |

| | | |
|---|---|---|
| **Total claim amount: $3,614,156.07 (secured = $3,614,156.07; unsecured = $0.00)** | | Drive Property Sale"), pursuant to the Court's September 9, 2019 Order Granting Debtor's Expedited Motion to (A) Approve Sale of Real Property, Free and Clear of Liens, Claims and Encumbrances; (B) Authorize Debtor to Enter Into Contract for Sale of Real Property; and (C) Approve Payment of Commission to Broker and Debtor from Closing Proceeds [ECF No. 111] (the "Eagle Drive Property Sale Order"). |
| | | This claim was completely paid and satisfied by virtue of the Eagle Drive Property Sale. There was no unsecured deficiency. Accordingly, this claim will be deemed paid in full and Professional Bank will not be entitled to a Class 7 General Unsecured Claim. |
| Class 3B – Secured Claim of Professional Bank (first mortgage on real property) (Claim # 25)<br><br>**Total claim amount: $308,450.11 (secured = $308,450.11; unsecured = $0.00)** | Unimpaired | Class 3B, the Secured Claim of Professional Bank (first mortgage on real property), is unimpaired by this Plan. This claim is secured by the real property located at 183 Golf Village Blvd, Jupiter, FL 33458 (the "Golf Village Property"), which is owned solely by Joyce. The Debtor is a co-obligor on the underlying Fixed-Adjustable Rate Note (the "Golf Village Note"), and Joyce is the mortgagor on the underlying Mortgage (the "Golf Village Mortgage"), joined by the Debtor. |
| | | The Golf Village Note and Golf Village Mortgage are being paid in the ordinary course and the Debtor and Joyce are current in their obligations to Professional Bank under the Golf Village Note and Golf Village Mortgage. The Golf Village Note and Golf Village Mortgage shall remain in full force and effect and shall not be otherwise modified by virtue of this Plan. The Debtor and Joyce shall remain fully bound by the terms of the Golf Village Note and Golf Village Mortgage. Accordingly, Professional Bank will not be entitled to a Class 7 General Unsecured Claim. |
| Class 4 – Secured Claim of Larsen Capital, LLC (second mortgage on real property and pledge against securities) (Claim # 26)<br><br>**Total claim amount: $1,002,199.10 (secured = $1,002,199.10; unsecured = $0.00)** | Impaired | Class 4, the alleged Secured Claim of Larsen Capital, LLC ("Larsen Capital") (second mortgage on real property and pledge against securities) (the "Larsen Claim"), is impaired by this Plan. The alleged Larsen Claim was secured by the Eagle Drive Property, and if allowed, is further secured by pledges against the Debtor's interest(s) in: (a) Superplay Development Group, LLC ("Superplay Development") (whereby the Debtor owns 17.5% of the common shares of Superplay Development); and (b) Superplay, LLC ("Superplay") (whereby the Debtor owns 22.5% of the common shares of Superplay). (Superplay Development and Superplay shall hereinafter be defined as the "Superplay Entities"). |
| | | With respect to Larsen Capital's secured claim against the Eagle Drive Property, the Eagle Drive Property Sale fully and completely satisfied Larsen Capital's secured claim against the Eagle Drive Property (pursuant to the Eagle Drive Property Sale Order), to the extent such Larsen Claim is allowed, and further fully and completely satisfied Larsen Capital's Post-Petition Loan, as identified and defined in the |

| | | |
|---|---|---|
| | | Court's Order Granting Debtor's Motion to Incur Post-Petition Debt [ECF No. 115]. Thereafter, after taking into account the sales proceeds received, Larsen Capital claimed to be owed the amount of $1,002,199.10, pursuant to the various loan documents attached to its Proof of Claim (Claim # 26). The Debtor disputes that Larsen Capital is owed such amounts. Such remaining Larsen Claim remains an alleged secured claim against the Superplay Entities. |
| | | To the extent that the Larsen Claim is allowed, then unless otherwise adjudicated by any subsequent Court order (or judgment), the Debtor will transfer his interest(s) in the Superplay Entities to Larsen Capital, in full and complete satisfaction and release of any and all amounts owed by the Debtor or Joyce Frank to Larsen Capital, and any further claim in this bankruptcy proceeding. Accordingly, upon such transfer, any allowed claim(s) owing to Larsen Capital will be deemed paid in full and Larsen Capital will not be entitled to a Class 7 General Unsecured Claim. Furthermore, by virtue of such transfer, in the event that such claim(s) are allowed, Larsen Capital will be paid in full, and shall release Joyce Frank of any and all liability, as well. This treatment shall not affect or release any Claims Against Larsen, as identified in ¶ 3.02 below, unless otherwise adjudicated by any subsequent Court order (or judgment). Nothing stated herein shall act as a waiver of the Debtor's right to object to the Larsen Claim or make any other claim(s) against Larsen Capital (or any related individuals or entities). |
| Class 5 – Secured Claim of NEC Financial Services, LLC (judgment lien on real property) (Claim # 10)<br><br>**Total claim amount: $44,429.79 (secured = $0.00; unsecured = $44,429.79)** | Impaired | Class 5, the Secured Claim of NEC Financial Services, LLC ("NEC Financial Services") (judgment lien on real property), is impaired by this Plan. This claim was secured by the Eagle Drive Property. Pursuant to the Eagle Drive Property Sale Order, any holders of valid judgment liens against the Eagle Drive Property shall be treated as set forth in the Order Granting Debtor's Motion to Avoid Judicial Liens on Exempt Property [ECF No. 117] (the "Judicial Lien Order"). |
| | | Pursuant to the Judicial Lien Order, the NEC Judgment Lien (as defined in the Judicial Lien Order) "shall attach to the Debtor's net proceeds of the sale of the [Eagle Drive Property]". However, by virtue of the payments to various lienholders and other amounts set forth in ¶ 10 of the Eagle Drive Sale Order, there were no net proceeds of the sale available to the Debtor. As such, NEC Financial Services has a wholly unsecured claim in this bankruptcy proceeding. Accordingly, NEC Financial Services shall have an allowed general unsecured claim in the amount of $44,429.79 and shall be entitled to a Class 7 General Unsecured Claim in such amount. |
| Class 6 – General Unsecured Non-Dischargeable Claim | Impaired | Class 6, the General Unsecured Non-Dischargeable Claim of Investors Bank ("Investors"), is impaired by this Plan. The claim is a general unsecured claim. However, Investors asserted that the debt owed is non-dischargeable, pursuant |

| | | |
|---|---|---|
| of Investors Bank (Claim # 9)<br><br>**Total claim amount: $3,158,046.46** | | to 11 U.S.C. § 523(a)(4) and (6) (the "Non-Dischargeability Claim"). |
| | | The Debtor and Investors resolved the Non-Dischargeability Claim (the "Investors Bank Settlement"), and entered into a Settlement Agreement (the "Investors Settlement Agreement") such that Investors shall be entitled to the entry of a non-dischargeable agreed judgment (the "Judgment") in the amount of $300,000.00. On April 16, 2020, the Debtor filed a Motion to Approve Settlement Between the Debtor, Joyce Frank and Investors Bank [ECF No. 216] (the "Investors Settlement Motion"), to obtain approval of the Investors Bank Settlement, which remains pending before the Court. |
| | | In order to satisfy the Judgment, Investors shall receive the total amount of $300,000.00, as set forth herein: |
| | | (a). The Judgment shall be satisfied upon Investors' receipt of the payments as set forth herein. An initial payment of $112,000.00 (the "Initial Payment") shall be disbursed by Dilworth Paxson LLP ("Investors' Attorney") to Investors no later than the next business day following the entry of an Order granting the Investors Settlement Motion (the "Approval"). The remaining balance of $188,000.00 shall be treated as follows: (i) if the Debtor makes payment to Investors in the amount of $50,000.00 (the "September Payment") on or before September 30, 2020, the remaining balance ($138,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment identified and defined in ¶ (d) below; alternatively (ii) if the September Payment is not made to Investors on or before September 30, 2020, the Debtor can pay $63,000.00 (the "November Payment") to Investors on or before November 15, 2020, the remaining balance ($125,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment; or alternatively, (iii) if neither the September Payment nor the November Payment is made to Investors on or before the date(s) indicated above, the Debtor can pay $75,000.00 (the "December Payment") to Investors on or before December 31, 2020, the remaining balance ($113,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment (these payments shall collectively be defined as the "Discount Payments"). Upon any of the Discount Payments having cleared, and upon payment of any required Larsen Payment, or the expiration of the time period described in ¶ (h) below, the Judgment will be satisfied, and Investors will execute and record an appropriate Satisfaction of Judgment. If none of the Discount Payments are made, then Investors shall be entitled to exercise all rights and remedies available to it as the holder of the Judgment against the Debtor, subject to ¶ (c) below. |
| | | (b). The Initial Payment shall be comprised of a contribution from Joyce in the amount of $112,000.00 (the "Deposit"). |

(c). If the Debtor timely makes any of the Discount Payments, then Investors will thereafter refrain from any post-judgment collection or execution remedies, and execution of the Judgment shall be expressly withheld, until payment of any required Larsen Payment, or the expiration of the time period described in ¶ (h) below, at which time the Judgment will be satisfied. Furthermore, execution of the Judgment shall be expressly withheld until January 1, 2021, to allow for the Debtor to make any of the Discount Payments.

(d). In addition to the Discount Payments referenced above, the first $125,000.00 received or recovered (net, after payment of any of the Debtor's attorneys' fees and costs incurred in obtaining the Larsen Payment) by the Debtor (directly or indirectly, including to any relative or entity in which the Debtor has an interest) from Larsen Capital, LLC (directly or indirectly, including personally from Jeffrey Larsen or from any entity that Jeffrey Larsen has an interest) (collectively "Larsen"), for any reason whatsoever, including without limitation, collection of any judgment against Larsen or any settlement payment(s) from Larsen (the "Larsen Payment"), within three (3) years from the Approval date, shall be paid to Investors, upon receipt of same. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ (f) and ¶ (g) below.

(e). If any settlement is reached (within that three (3) year period) between the Debtor and Larsen for payment of a Larsen Payment within that three (3) year time period or thereafter, that Larsen Payment shall be paid to Investors upon receipt. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ (f) and ¶ (g) below. Investors agrees not to object to any settlement reached by and between the Debtor and Larsen, no matter the amount, as long as the Debtor otherwise complies with this Settlement, that settlement with Larsen is reasonable under all then pertinent circumstances and was reached in good faith. Debtor will keep Investors apprised of and shall promptly respond to any inquiries by Investors about the status of efforts by the Debtor and his counsel to obtain the Larsen Payment.

(f). If Larsen contributes $50,000.00 towards any Discount Payment, then: (i) $12,000 of that Larsen contribution for the September Payment shall not be applied as a Larsen Payment; (ii) $17,000.00 of that Larsen contribution for the November Payment shall not be applied as a Larsen Payment; and (iii) $22,000.00 of that Larsen contribution for the December Payment shall not be applied as a Larsen Payment.

(g). If Larsen contributes any amount less than $50,000.00 towards any Discount Payment, then such payment(s) shall specifically be excluded from the Larsen Payment and applied to the Discount Payment by the following formula: 30% for any amount between $40,000.00 to $49,999.99;

| | | |
|---|---|---|
| | | 27.5% for any amount between $30,000.00 to $39,999.99; 25% for any amount between $20,000.00 to $29,999.99; 22.5% for any amount between $10,000.00 to $19,999.99; and 20% for any amount between $0.00 to $9,999.99. |
| | | (h). If one of the Discounts Payments has been paid and the Larsen Payments are received during the time periods specified in ¶ (e), then the remainder of the Judgment will be satisfied. In such case, Investors shall fully release the Debtor from all residual claims relating to the Judgment. |
| | | (i). Effective upon the Approval, the Debtor hereby releases, acquits and forever discharges Investors and each, every and all of its current and past officers, directors, shareholders, affiliated corporations, subsidiaries, agents, employees, representatives, attorneys, predecessors, successors and assigns, of and from any and all claims, damages, causes of action, suits and costs, of whatever nature, character or description, whether known or unknown, anticipated or unanticipated (collectively the "Investors Released Parties"), which the Debtor has, may now have or may hereafter have or claim to have against any of the Investors Released Parties. |
| | | Investors shall only be entitled to the payments set forth herein and shall not be entitled to any additional payment as a general unsecured creditor. Investors shall not be entitled to a Class 7 General Unsecured Claim. |
| | | Any and all other terms of the Investors Settlement Agreement are incorporated herein by reference. The Debtor and Investors shall comply with all of the terms of the Investors Settlement Agreement (or any Court-approved amendments and/or modifications thereto). |
| Class 7 - General Unsecured Creditors<br><br>**Total General Unsecured Claims: $25,503,163.78** | Impaired | Class 7 consists of all allowed dischargeable general unsecured claims. The Class 7 Creditors shall share *pro rata* in a total distribution in the amount of $200,000.00 (the "Plan Payments"), to be paid over a period of time of 60 months. |
| | | Any allowed dischargeable unsecured or undersecured general claimant scheduled to receive a total distribution of $250.00 or less shall be paid in a lump sum within sixty (60) days from the Effective Date. The Debtor estimates that the lump sum payment(s) will total $801.71. |
| | | Any allowed dischargeable general unsecured claimants scheduled to receive a total distribution of more than $250.00 shall receive payment over 5 years, in 20 quarterly payments, with the first payment due on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every quarter thereafter (the "Plan Period"). |
| | | The specific creditors to be paid under this Plan (as well as a payment schedule) are set forth in the List of General Unsecured Creditors to be Paid Pursuant to Plan, attached as Exhibit "A" (the "Creditor Payment List"). At the time of the |

| | | |
|---|---|---|
| | | filing of this Plan, the Creditor Payment List is merely an estimate provided by the Debtor, as numerous Objections to Claims are pending as of the date of this Plan, and the Debtor may object to additional claim(s) before the expiration of any deadline to do so.  Within 15 days after the later of the date of the entry of a final, non-appealable order confirming this Plan (or any amended Plan), or the date that the last remaining Objection(s) to Claim(s) are adjudicated by the entry of a final, non-appealable order, the Debtor shall file with the Court a final Creditor Payment List, which shall provide for the actual payments to be received by each creditor under this Plan. |
| | | At the time of the filing of this Plan, the Debtor estimates that the total amount of dischargeable general unsecured claims is $25,503,163.78 and that the quarterly payments will total $9,959.91 per payment.  Accordingly, the Debtor estimates that dischargeable general unsecured creditors will be receiving a distribution of approximately 0.7842% of their allowed claim(s). |
| Class 8 - Equity Interest of the Debtor | Unimpaired | Class 8 consists of the Debtor's interest in property of the estate, which is retained under this Plan.  The Debtor has committed the value of 5 years of his projected household net disposable income toward funding this Plan and has otherwise met all of the requirements under the Bankruptcy Code.  Class 8 is presumed to accept this Plan and not entitled to vote. |

Unclassified Claims:

| | |
|---|---|
| Administrative Professional Fees and Costs of Debtor's Professionals | The administrative professional fees and costs of the Debtor's attorneys and the Debtor's accountant are subject to final allowance by the Court, after the filing of the appropriate fee application(s) and notice and hearing.  The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan.  Such fees and costs shall be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  To the extent that such fees and costs are not paid in full on the Effective Date of this Plan, in cash, then such administrative professional fees and costs shall be paid from the Additional Non-Exempt Funds described below.  Any administrative professional fees and costs that are incurred post-confirmation are not included herein and are not subject to the Court's approval. |
| Alleged Administrative Fees of the State of New Jersey Division of Taxation | The State of New Jersey Division of Taxation filed Claim # 32, in the amount of $50,000.00, asserting an administrative tax claim relating to FEC Towne, LLC.  The Debtor has filed an Objection to Claim [ECF No. 179] as to Claim # 32 on numerous grounds and does not believe that the State of New Jersey Division of Taxation is entitled to any administrative claim in this proceeding.  However, to the extent that the Court determines that the State of New Jersey Division of Taxation is, in fact, entitled to an administrative tax claim, then such claim shall be paid in full on the Effective Date of this Plan, in cash, or over a term of sixty (60) months from the Petition Date, or upon such other terms as may be agreed upon by the State of New Jersey |

|  | Division of Taxation and the Debtor. To the extent that such Allowed Administrative Expense Claim is not paid in full on the Effective Date of this Plan, in cash, then such Allowed Administrative Expense Claim shall be paid from the Additional Non-Exempt Funds described below. |
|---|---|

3.02   Payment of Additional Amounts to Creditors from Additional Sources.   In addition to the Plan Payments referenced above, creditors may receive additional amounts from additional sources, as described below.

(a) *Debtor's Commission from Sale of Eagle Drive Property Sale.* Pursuant to the Eagle Drive Property Sale Order, the Debtor, as a real estate sales associate of The Sheehan Agency, was entitled to a share of the underlying real estate commission, in the amount of $49,000.00, which was required to be held in Debtor's counsel's trust account, to be held in escrow as property of the bankruptcy estate, pursuant to 11 U.S.C. § 541, pending further Court order (the "Eagle Drive Commission"). The Debtor's counsel is holding the Eagle Drive Commission in its attorney trust account.

(b) *Debtor's Share of 2017 and 2018 Federal Income Tax Return.* Pursuant to the Court's February 10, 2020 Order Granting Debtor's Motion for Authority to Allow the Division and Reimbursement of the Tax Refund to Debtor's Non-Filing Spouse [ECF No. 172], upon receipt of the Debtor's and Joyce's 2017 and 2018 Federal Income Tax Refund, the Debtor is authorized to release to Joyce her share of the 2017 and 2018 Federal Income Tax Refund, based on the proportional W-2 withholdings. The Debtor's share of the 2017 and 2018 Federal Income Tax Refund (the "Debtor's Tax Refund") would be property of the bankruptcy estate, pursuant to 11 U.S.C. § 541.

(c) *Non-Exempt Portion of Debtor's Claim in New Jersey Bankruptcy Cases.* On December 19, 2018, several entities for which the Debtor was previously affiliated with filed Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the District of New Jersey. The debtors are *Frank Theatres Bayonne/South Cove, LLC, et al.*, Case No. 2:18-bk-34808-SLM (the "New Jersey Bankruptcy Cases"). The Debtor timely filed a Proof(s) of Claim in the New Jersey Bankruptcy Cases, based upon, among other things, unpaid wages and unreimbursed expenses (collectively, the "New Jersey Bankruptcy Claim"). The amount of the New Jersey Bankruptcy Claim is $1,462,916.00. It is currently unknown whether the Debtor will receive any distribution on account of the New Jersey Bankruptcy Claim, and if so, the amount of such distribution.

The Debtor claimed as exempt a portion of the New Jersey Bankruptcy Claim in this bankruptcy proceeding, pursuant to Fla. Stat. § 222.11. The New Jersey Bankruptcy Cases were filed on December 19, 2018. As such, 6 months of wages prior to the filing of this bankruptcy proceeding would consist of wages from October 26, 2018 to December 19, 2018, a period of 54 days. At a salary of $225,000 per year, the exempt portion of the New Jersey Bankruptcy Claim would be $33,287.76 (the "Exempt New Jersey Bankruptcy Claim").

Accordingly, to the extent that there is any distribution(s) to the Debtor in the New Jersey Bankruptcy Case, the first $33,287.76 would constitute the Debtor's exempt wages and be comprised of the Exempt New Jersey Bankruptcy Claim. Any and all distribution(s) in excess of the Exempt New Jersey Bankruptcy Claim would be non-exempt and would be

property of the bankruptcy estate, pursuant to 11 U.S.C. § 541 (hereinafter defined as the "Non-Exempt New Jersey Bankruptcy Claim").

(d) *Claims Against Larsen Capital, LLC.* During the course of this bankruptcy proceeding, the Debtor discovered that he and Joyce may have certain claims against Larsen Capital, LLC (directly or indirectly, including personally from Jeffrey Larsen or from any entity that Jeffrey Larsen has an interest) (collectively, the "Claims Against Larsen"). The recovery of any *net* Claims Against Larsen would first be distributed as set forth in ¶ 3.01 above, to Investors. Thereafter, any and all remaining funds from any Claims Against Larsen, whether obtained through judgment or settlement, which belong to the Debtor, would be non-exempt and would be property of the bankruptcy estate, pursuant to 11 U.S.C. § 541.

(e) *Liquidation of the Superplay Entities.* To the extent that the Larsen Claim is disallowed, then the Debtor's interest in the Superplay Entities would be unencumbered. In that case, the Debtor shall liquidate his interest(s) in the Superplay Entities for the benefit of the bankruptcy estate. Any such amounts (including any dividends received on account of the Debtor's ownership interest(s) in the Superplay Entities until such interests are liquidated) would be non-exempt and would be property of the bankruptcy estate, pursuant to 11 U.S.C. § 541.

The Eagle Drive Commission, the Debtor's Tax Refund, the Non-Exempt New Jersey Bankruptcy Claim, the *net* Claims Against Larsen (after payment to Investors as set forth above) and the amounts received on account of the Debtor's ownership interest(s) in the Superplay Entities shall hereinafter be defined as the "Additional Non-Exempt Funds". Any Additional Non-Exempt Funds shall first go to pay any allowed administrative expense claims, including without limitation, any allowed Administrative Expense Claims for the Debtor's professional fees and costs. After payment in full of all allowed Administrative Expense Claims, to the extent that any Additional Non-Exempt Funds remain, such Additional Non-Exempt Funds shall go to pay any Class 1 and Class 2 Unsecured Priority Claims. After payment of any Class 1 and Class 2 Unsecured Priority Claims, if such claims are not completely satisfied by virtue of the Additional Non-Exempt Funds, then the Debtor shall re-calculate the remaining balance(s) due, such that these balances are paid on a quarterly basis within the time frame(s) described in ¶ 3.01 above.

After payment in full of all allowed Administrative Expense Claims and Class 1 and Class 2 Unsecured Priority Claims, to the extent that any Additional Non-Exempt Funds remain, such Additional Non-Exempt Funds shall go to pay Class 7 General Unsecured Creditors, on a pro-rata basis. Such distribution shall be in addition to the Plan Payments referenced in ¶ 3.01 above. The Debtor shall provide notice to Class 7 General Unsecured Creditors that such payments are in the nature of Additional Non-Exempt Funds, rather than a Plan Payment(s).

3.03   Default of Plan Payment(s). Unless otherwise specifically set forth above, in the event of any default by the Debtor of any payment required by ¶ 3.01 above, the Claimant shall provide the Debtor with notice of such default, by electronic mail to the Debtor's attorney, Zach B. Shelomith, Esq. (at zbs@lsaslaw.com) and by facsimile transmittal (954-920-5371) (the "Default Notice"). The Debtor shall be afforded ten (10) days from the date of receipt by the Debtor's counsel of such Default Notice to cure such default. The Claimant shall not take any further action(s) against the Debtor, including without limitation, proceeding against the

Debtor in a court of competent jurisdiction, seeking *in rem* remedies against any of the subject properties described above or alleging a "material" default of this Plan by the Debtor, unless the cure period referenced herein has expired.

To the extent that any default by the Debtor (and failure to cure within the time frame referenced above) of any payment required by ¶ 3.01 above relates to a *secured* claim, and occurs during the Plan Period, then such Claimant's remedies are limited to any and all *in rem* remedies against the subject property (pursuant to the underlying loan documents), unless this case is dismissed. To the extent that any default by the Debtor (and failure to cure within the time frame referenced above) of any payment required by ¶ 3.01 above relates to a *secured* claim, and occurs after the Plan Period, then such Claimant's remedies are limited to any and all *in rem* remedies against the subject property (pursuant to the underlying loan documents), as long as the Debtor ultimately receives a discharge. Should the Debtor not receive a discharge, then such remedies shall not be limited and shall include any *in personam* rights against the Debtor pursuant to the underlying loan documents.

To the extent that any default by the Debtor (and failure to cure within the time frame referenced above) of any payment required by ¶ 3.01 above relates to an *unsecured* claim, then such Claimant may pursue whatever remedies are available pursuant to the underlying contract(s) or agreement(s) between the Claimant and the Debtor or pursuant to applicable law. However, should the Debtor ultimately receive a discharge, then any such claims shall be discharged pursuant to the Bankruptcy Code. This section shall not apply to any unclassified administrative professional claims owed by the Debtor.

## ARTICLE IV
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

4.01  Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as unknown, disputed, contingent, or unliquidated.

4.02  Delay of Distribution on a Disputed Claim. No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final non-appealable order.

4.03  Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and in compliance with Fed. R. Bankr. P. 9019.

## ARTICLE V
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon information and belief, as of the date of this Plan, the Debtor does not have any executory contracts or unexpired leases. In the event that it is determined that the Debtor is, in fact, a party to an executory contract or an unexpired lease, then the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases, existing or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease

---

under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The means necessary for the execution of this Plan include the following: (a) the Debtor's income from JFC; and (b) the Additional Non-Exempt Funds, defined in ¶ 3.02 above. The Debtor's household net income is described in detail in the Debtor's Disclosure Statement, which is being circulated with this Plan.

The Debtor shall, and believes he can, generate sufficient income to make all payments due under this Plan. Attached to the Disclosure Statement is a 5 year cash flow projection, demonstrating that the Plan Payments are feasible. The estimated cash on hand necessary as of the Effective Date of this Plan is $101,702.20 (minus any allowed Administrative Expense Claims that have already been paid prior to the Effective Date of this Plan).

To the extent that the Debtor wishes to prepay any amounts due under this Plan from exempt assets or other third-party sources, the Debtor reserves the right to do so without penalty and to seek the entry of a final decree closing this case. In that case, the Plan Period, as defined above, shall be shortened to such time that the Debtor pays all Class 1, 2, 6 and 7 creditors all amounts due under this Plan.

The Debtor, as reorganized, will retain and will be re-vested in all property of the Estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to this Plan and property transferred to Creditors of the Debtor pursuant to the expressed terms hereof. The retained property shall be used by the Debtor in the ordinary course of his personal affairs. (Further details concerning the nature and scope of the Debtor's personal affairs may be found in the Disclosure Statement which accompanies this Plan).

## ARTICLE VII
## GENERAL PROVISIONS

7.01   <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a)   *Allowed Secured Claim* - shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under 11 U.S.C. § 553, but in any event only to the extent of the value, determined in accordance with 11 U.S.C. § 506(a), of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

(b)   *Allowed Undersecured Claim* - shall mean the amount of a prepetition secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

(c)   *Allowed Unsecured Claim* - shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court, if any.

Amount of Allowed Unsecured Claims. The Debtor's scheduled and unsecured claims are set forth in his Schedules D and F [ECF No. 1] and Amended Schedules D and F [ECF No. 144]. Attached hereto as Exhibit "A" is the estimated Creditor Payment List, including the proposed distribution and first dividend(s). At the time of the filing of this Plan, the Debtor estimates that the total amount of dischargeable general unsecured claims included in Class 7 is $25,503,163.78.

Based upon the distribution amount of $200,000.00, holders of allowed dischargeable general unsecured claims will receive a distribution of 0.7842%. This distribution is higher than what holders of allowed general unsecured claims would receive in a hypothetical Chapter 7, in which case the Debtor estimates that such claimants would receive a distribution of 0.00%.

Liquidation analysis. This estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's non-exempt property. The Debtor's real property is undersecured and has no equity. The Debtor's non-exempt personal property is valued at $68,492.50, based on the values set forth in the Debtor's bankruptcy schedules and current funds being held in the Debtor's Debtor-in-Possession Account(s). After deducting estimated Chapter 11 administrative expenses, as well as anticipated Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of $0.00 if this case were converted to a Chapter 7 liquidation. A more detailed liquidation analysis is set forth in the Disclosure Statement that accompanies this Plan.

Accordingly, creditors are receiving more by virtue of this Plan, then they would if the Debtor's case was a Chapter 7 proceeding.

(d)   *Causes of Action* - shall be used in its broadest sense and shall include all causes of action of the Debtor and all causes of action which a Trustee would have if the proceedings were converted on the confirmation date to a proceeding under Chapter 7 of the Code and a Trustee were appointed. Causes of action shall include all rights or causes of action, whether legal or equitable, whether they arise under the Code or under other federal or state laws or under judicial decisions, whether or not they are the subject of presently pending litigation and whether they arise before or after the confirmation date, as well as rights belonging to the Debtor pursuant to 11 U.S.C. §§ 506, 510, 544, 545, 547, 548, 549 or 550.

(e)   *Claim* - shall mean any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a

right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

 (f) *Petition Date* – shall mean April 26, 2019.

 7.02 <u>Effective Date of Plan</u>. The Effective Date of this Plan is the fifteenth (15th) business day following the date of the entry of the order of confirmation. However, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

 7.03 <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

 7.04 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

 7.05 <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

 7.06 <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

 7.07 <u>Notice to Class 7 General Unsecured Creditors</u>. Pursuant to 11 U.S.C. § 1129(a)(15), if you object to confirmation to the Plan, the value of the property to be distributed under the Plan shall not be less than the projected disposable income of the Debtor (as defined in 11 U.S.C. § 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan (or during the period for which the Plan provides payments, whichever is longer). Pursuant to the Plan, the value of the property to be distributed to Class 7 General Unsecured Creditors under the Plan ($200,000.00) is equal to the projected disposable income of the Debtor to be received during the 5-year period beginning on the Effective Date.

### ARTICLE VIII
### DISCHARGE

 Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5). The Debtor will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523, except as provided in Fed. R. Bankr. P. Rule 4007(c).

# ARTICLE IX
# EFFECT OF CONFIRMATION

9.01    Vesting of Assets.  Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the Estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

9.02    Binding Effect.  Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and his respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

9.03    Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

9.04    Other Effect(s) of Confirmation.  If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

# ARTICLE X
# OTHER PROVISIONS

10.01   Reservation of Rights Under 11 U.S.C. § 1129(b).  The Debtor expressly reserves the right, pursuant to 11 U.S.C. § 1129(b), to request the Court to confirm this Plan if all of the applicable requirements of 11 U.S.C. § 1129 (a) have been met, other than those of 11 U.S.C. § 1129(a)(8).

10.02   Reservation of Right to Modify Plan Post-Confirmation.  The Debtor expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.  Any such request to modify this Plan shall be noticed to all creditors and interested parties, and no modification shall be granted absent proper notice and hearing.

10.03   Reservation of Rights Under Sections 1141(d)(5) and 350(a).  The Debtor reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment(s) under this Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns.  Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties.  If such request is granted, then upon the satisfaction of all payments required to be paid to Class 1, 2, 6 and 7 creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).  This paragraph only preserves the Debtor's right to seek the relief described above and does not conclusively grant such relief.  Creditors' and interested parties' rights to

Case 19-15509-EPK    Doc 219    Filed 04/21/20    Page 17 of 20

Case No. 19-15509-BKC-EPK
Page 17 of 18

<u>object to such relief shall similarly be preserved until such time as it is requested by the Debtor after confirmation</u>.

      10.04  <u>Disbursing Agent</u>.  All distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.  A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.

      10.05  <u>Post-Petition Interest on Claims</u>.  Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

      10.06  <u>Delivery of Distributions and Undeliverable or Returned Distributions</u>.  Subject to Fed. R. Bank. P. 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of the Debtor or his agents, or in a letter of transmittal, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.  In the event that any distribution to any holder is returned as an "Undeliverable or Returned Distribution", then no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtor or not; (b) returned to the Debtor because the Claimant cannot locate an account number belonging to the Debtor, despite the Debtor's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Debtor because the Claimant is no longer operating and has not provided the Debtor or the Court with any assignment information; or (d) returned to the Debtor because the Claimant indicates in writing that the Claimant does not wish to receive any distribution under this Plan and therefore waives any right to payment.

      All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made.  Thereafter, the amount represented by such Undeliverable or Returned Distribution shall be donated by the Debtor to the Bankruptcy Bar Association of the Southern District of Florida, Inc., a legal non-profit organization.  At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor and his property.

      10.07  <u>Time Bar to Cash Payments</u>.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be donated

Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

by the Debtor to the Bankruptcy Bar Association of the Southern District of Florida, Inc. At such time, any Claim in respect of such voided check shall be discharged and forever barred.

This Plan of Reorganization is dated April 21, 2020 and is hereby approved by the undersigned.

*Bruce Steven Frank*

Submitted by:

Zach B. Shelomith, Esq.,
Florida Bar No.: 0122548
Leiderman Shelomith Alexander
+ Somodevilla, PLLC
2699 Stirling Rd # C401
Ft. Lauderdale, FL 33312
Tel. No.: 954-920-5355
Fax No.: 954-920-5371
E-Mail: zbs@lsaslaw.com
**Attorneys for the Debtor**

Exhibit "A"

Bruce Steven Frank - List of General Unsecured Creditors to be Paid Pursuant to Plan

**Class 7 General Unsecured Creditors:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Distribution | Lump Sum Payment | Quarterly Payments | Primary Obligor | Comments |
|---|---|---|---|---|---|---|---|---|
| 7 | 1 | Centennial Bank, N.A. | $102,356.07 | $802.69 | $0.00 | $40.13 | Frank Investments, Inc. | Deficiency claim after short sale of real property owned by obligor |
| 7 | 3 | SunTrust Bank | $137,407.33 | $1,077.57 | $0.00 | $53.88 | Frank Investments, Inc. | 2016 Aston Martin Vanquish - deficiency claim (Debtor is co-buyer) |
| 7 | 4 | American Express National Bank | $4,728.43 | $37.08 | $37.08 | $0.00 | N/A | Unsecured claim - Credit Card # 3001 |
| 7 | 5 | Surrey Bank & Trust | $1,042,758.51 | $8,177.48 | $0.00 | $408.87 | Frank Theatres Inlet Square, LLC | Guaranty of secured loan against primary obligor's assets - FF&E |
| 7 | 6 | Surrey Bank & Trust | $1,052,826.31 | $8,256.44 | $0.00 | $412.82 | All Star Development of Conway, LLC | Guaranty of secured loan against primary obligor's assets - various |
| 7 | 7 | Surrey Bank & Trust | $453,930.79 | $3,559.80 | $0.00 | $177.99 | All Star Development of Conway, LLC | Guaranty of secured loan against primary obligor's assets - various |
| 7 | 8 | TD Auto Finance, LLC | $98,771.75 | $774.58 | $0.00 | $38.73 | N/A | Deficiency on 2015 Land Rover Range Rover (actual deficiency must be determined) |
| 7 | 10 | NEC Financial Services, LLC | $44,429.79 | $348.43 | $0.00 | $17.42 | Frank Theatres Inlet Square, LLC | Final judgment (after proceeds of collateral are applied) |
| 7 | 11 | American Express National Bank | $5,066.47 | $39.73 | $39.73 | $0.00 | N/A | Unsecured claim - Credit Card # 2008 |
| 7 | 12 | The Bancorp Bank | $11,198,221.26 | $87,818.29 | $0.00 | $4,390.91 | Various | Guaranty of secured loan against primary obligors' assets (includes updated amount) |
| 7 | 13 | BOTO SC Properties, LLC | $1,607,494.00 | $12,606.23 | $0.00 | $630.31 | Frank Entertainment Rock Hill, LLC | Lease guaranty - asserts compliance with § 502(b)(6) |
| 7 | 14 | Murrells Retail Associates, LLC | $1,517,148.27 | $11,897.73 | $0.00 | $594.89 | Frank Theatres Inlet Square, LLC | Lease guaranty - judgment - after reduction under § 502(b)(6) |
| 7 | 15 | 35 Oak US 5, Inc. | $336,000.00 | $2,634.97 | $0.00 | $131.75 | Frank Theatres Coral Springs, LLC | Final judgment - guaranty |
| 7 | 16 | Water Tower Square Associates | $76,849.46 | $602.67 | $0.00 | $30.13 | Frank Theatres Montgomeryville, LLC | Lease guaranty - complies with § 502(b)(6) |
| 7 | 17 | Bank of America, N.A. | $23,616.35 | $185.20 | $185.20 | $0.00 | N/A | Unsecured claim - Credit Card # 8175 |
| 7 | 18 | Bank of America, N.A. | $8,014.57 | $62.85 | $62.85 | $0.00 | N/A | Unsecured claim - Credit Card # 1597 |
| 7 | 20 | WhiteKnight Solutions, LLC | $28,125.00 | $220.56 | $220.56 | $0.00 | N/A | Consulting fee |
| 7 | 21 | Kingsport Mall, LLC | $1,382,853.28 | $10,844.56 | $0.00 | $542.23 | Frank Theatres Kingsport, LLC | Lease guaranty |
| 7 | 22 | United Bank of Philadelphia | $2,767,926.14 | $21,706.53 | $0.00 | $1,085.33 | Revolutions at Penn Treaty, LLC | Guaranty of secured loan (SBA) against primary obligor's assets (objection pending) |
| 7 | 23 | AJAX Metal Building Master Tenant LP | $1,846,105.60 | $14,477.46 | $0.00 | $723.87 | Unknown | Lease guaranty - judgment - claims no acceleration |
| 7 | 27 | Padula Bennardo Levine, LLP | $7,254.31 | $56.89 | $56.89 | $0.00 | N/A | Legal services |
| 7 | 30 | Brixmor Victory Square, LLC | $516,753.33 | $4,052.46 | $0.00 | $202.62 | Frank Theatres Victory, LLC | Lease guaranty - claims no acceleration |
| 1, 7 | 31 | State of New Jersey | $148,198.42 | $1,162.20 | $0.00 | $58.11 | FEC Towne, LLC | General Unsecured Portion of Alleged Tax Claim |
| 7 | SCH | Barclays Bank Delaware | $78,038.84 | $611.99 | $0.00 | $30.60 | N/A | Unsecured claim - Credit Card # 9278 |
| 7 | SCH | Chase Card Services | $39,184.00 | $307.29 | $0.00 | $15.36 | N/A | Unsecured claim - Credit Card # 9753 |
| 7 | SCH | Chase Card Services | $1,099.00 | $8.62 | $8.62 | $0.00 | N/A | Unsecured claim - Credit Card # 6046 |
| 7 | SCH | Citibank, N.A. | $71,280.32 | $558.99 | $0.00 | $27.95 | N/A | Unsecured claim - Credit Card # 7004 |
| 7 | SCH | De Lage Landen Financial Services, Inc. | $1,680.46 | $13.18 | $13.18 | $0.00 | Frank Investments, Inc. | Guaranty of unsecured loan to primary obligor |
| 7 | SCH | Destiny USA Holdings, LLC | $390,000.00 | $3,058.44 | $0.00 | $152.92 | Frank Entertainment Companies, LLC | Guaranty of unsecured loan to primary obligor |
| 7 | SCH | Newspaper Media Group | $2,117.50 | $16.61 | $16.61 | $0.00 | Frank Entertainment Companies, LLC | Guaranty of unsecured loan to primary obligor |
| 7 | SCH | Sony Pictures Releasing | $11,468.74 | $89.94 | $89.94 | $0.00 | Frank Theatre Group | Guaranty of unsecured loan to primary obligor |
| 7 | SCH | Sysco Business Services | $5,821.80 | $45.66 | $45.66 | $0.00 | Tilton Shopping Center | Guaranty of unsecured loan to primary obligor |
| 7 | SCH | Twentieth Century Fox Film Corp. | $45,257.11 | $354.91 | $0.00 | $17.75 | Frank Entertainment Companies, LLC | Guaranty of unsecured loan to primary obligor |
| 7 | SCH | Universal Film Exchanges LLC | $32,142.90 | $252.07 | $0.00 | $12.60 | Frank Theatres Management LLC | Guaranty of unsecured loan to primary obligor |
| 7 | ASCH | Amazon Content Services, LLC | $623.67 | $4.89 | $4.89 | $0.00 | Frank Theatres Management LLC | Guaranty of unsecured loan to primary obligor |
| 7 | ASCH | Jupiter Medical Center | $1,127.00 | $8.84 | $8.84 | $0.00 | N/A | Unpaid medical bills |
| 7 | ASCH | Sheridan Emerg Phys Srvs, Inc | $1,487.00 | $11.66 | $11.66 | $0.00 | N/A | Unpaid medical bills |
| 7 | STLMT | Frank Investments, Inc. | $40,000.00 | $313.69 | $0.00 | $15.68 | N/A | Settlement regarding Ventor Sale with bankruptcy estate of Frank Investments, Inc. |
| 7 | STLMT | Frank Investments, Inc. | $375,000.00 | $2,940.81 | $0.00 | $147.04 | N/A | Settlement regarding pre-petition transfers with bankruptcy estate of Frank Investments, Inc. |
| | | Total: | $25,503,163.78 | $200,000.00 | $801.71 | $9,959.91 | | |
| | | Percentage Distribution: | 0.7842% | | | | | |

**Disposition of Other Claims Not Listed Above:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Disposition | Primary Obligor | Comments |
|---|---|---|---|---|---|---|
| 7 | 2 | TD Auto Finance, LLC | $108,831.34 | Objection to Claim Sustained [ECF No. 198] | N/A | 2014 Bentley Flying Spur (Joyce Frank is co-buyer) (fully secured amount of claim) |
| 6 | 9 | Investors Bank | $300,000.00 | Non-Dischargeable Consent Judgment | Rio Mall, LLC | Non-Dischargeable Consent Judgment |
| N/A | 19 | Department of the Treasury | $0.00 | No Claim | N/A | Estimated taxes/penalties for 2017 and 2018 |
| 3A | 24 | Professional Bank | $3,614,156.07 | Satisfied | N/A | Secured claim against 392 Eagle Dr, Jupiter, FL 33477 |
| 3B | 25 | Professional Bank | $308,450.11 | Making payments - current | N/A | Secured claim against 183 Golf Village Blvd, Jupiter, FL 33458 |
| 4 | 26 | Larsen Capital, LLC | $1,654,920.93 | Fully Secured | N/A | Secured claim against 392 Eagle Dr, Jupiter, FL 33477 (Joyce Frank is co-obligor) |
| 7 | 28 | STORE Master Funding III, LLC | $4,850,629.85 | Objection to Claim Sustained [ECF No. 199] | Frank Entertainment Group, LLC | Guaranty of secured loan against primary obligor's assets |
| 7 | 29 | Walt Disney Studios Motion Pictures | $134,983.93 | Objection to Claim Sustained [ECF No. 199] | Frank Entertainment Companies, LLC | N/A |
| 1 | 31 | State of New Jersey | $214,740.71 | Priority Claim - Objection Pending | N/A | Taxes for Various Years |
| N/A | 32 | State of New Jersey | $50,000.00 | Priority Claim - Objection Pending | N/A | Estimated taxes for 4/2019 to current date |
| 7 | 33 | ACAR Leasing LTD | $8,552.55 | Objection to Claim Sustained [ECF No. 200] | Frank Investments, Inc. | 2018 GMC Terrain (alleged unsecured deficiency) |

| | | | | | | |
|---|---|---|---|---|---|---|
| N/A | SCH | VW Credit | | $43,838.45 | Objection to Claim Sustained [ECF No. 201] | Frank Investments, Inc. | 2015 Audi A7 (fully secured amount of claim) |
| 7 | SCH | No S Properties, LLC | | $269,039.59 | Unliquidated/Contingent/Disputed | Frank Theatres Teays Valley, LLC | Guaranty of unsecured loan to primary obligor/Obligation Released - Nothing Owed |
| 7 | ASCH | Malvern Bank, N.A. | | $0.00 | Amount unknown; contingent/unliquidated | Superplay Development Group, LLC | Guaranty of secured loan against primary obligor's assets |
| | | | | | | | |

**Please Note:** This Exhibit is for Informational Purposes Only and is Preliminary in Nature, as numerous Objections to Claims remain pending as of the date of filing of this Exhibit.
A final version of the List of General Unsecured Creditors to be Paid Pursuant to Plan, with exact final payment amount(s), will be filed upon the adjudication of all Objections to Claims and upon the expiration of the deadline to object to claims.