UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                             Case No. 19-15509-BKC-EPK

BRUCE STEVEN FRANK,                                Chapter 11

    Debtor.

_____/

## DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF
## REORGANIZATION OF BRUCE STEVEN FRANK


**IMPORTANT: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED CHAPTER 11 PLAN. PLEASE READ THIS DOCUMENT WITH CARE.**


**Submitted on April 21, 2020 by:**

**LEIDERMAN SHELOMITH ALEXANDER +
SOMODEVILLA, PLLC
2699 Stirling Road, Suite C401
Fort Lauderdale, Florida 33312
Tel.  954.920.5355  Fax.  954.920.5371
Zach B. Shelomith - Fla. Bar No. 0122548
zbs@lsaslaw.com**
*Attorneys for the Debtor*

## I.    INTRODUCTION

This is the Disclosure Statement (the "Disclosure Statement") in the Chapter 11 case of Bruce Steven Frank (the "Debtor"), who is the Plan Proponent.  This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor on April 21, 2020.  ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed below.  General unsecured creditors are classified in Class 7 and will receive a distribution of approximately 0.7842% of their allowed claims, which is greater than the amount that such creditors would receive in a Chapter 7 liquidation.

### A.    **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;
- How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim if the plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1.    *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the Clerk of Court, United States Bankruptcy Court, 1515 North Flagler Drive, Suite 801, West Palm Beach, FL 33401.  See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.  **(Please note: all blanks contained in this Disclosure Statement will be filled in upon approval of the Disclosure Statement, for the version to be mailed to all creditors and interested parties.)**

2. *Deadline for Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon Zach B. Shelomith, Counsel for the Debtor, 2699 Stirling Rd # C401, Ft. Lauderdale, FL 33312 by _____.

3. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Zach B. Shelomith, Counsel for the Debtor, 2699 Stirling Rd # C401, Ft. Lauderdale, FL 33312.

C. **Disclaimer**

***On _____, the Court approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

II. **BACKGROUND**

A. **Events Leading to Chapter 11 Filing**

The Debtor is an individual and held controlling interests in several companies involved in the motion picture theater industry, as well as ownership of commercial real properties, many of which themselves are currently Chapter 11 debtors. A list of those companies is provided in the Debtor's Schedules [ECF No. 1].

The various motion picture theater operators were unable to absorb the expenses associated with the closing of unprofitable theaters, which led to several of these companies filing their own Chapter 11 cases. This affected those other companies that were involved in the ownership of commercial real properties, and several of these companies also filed Chapter 11 cases. The Debtor personally guaranteed much of the debt of these several companies. With no further income source from these companies, the Debtor became unable to repay the debt obligations that he personally guaranteed. The Debtor therefore filed this Chapter 11 proceeding in order to obtain a fresh start and provide for a distribution to creditors, in an amount in excess of what such creditors would receive in a Chapter 7 proceeding.

Currently, the only companies for which the Debtor has an ownership interest, which were actively engaged in business prior to the COVID-19 pandemic, were: (a) Superplay Development Group, LLC ("Superplay Development") (whereby the Debtor owns 17.5% of the common shares of Superplay Development); and (b) Superplay, LLC ("Superplay") (whereby the Debtor owns 22.5% of the common shares of Superplay). (Superplay Development and Superplay shall hereinafter be defined as the "Superplay Entities"). The Debtor does not currently derive any income from the Superplay Entities. The Debtor's interest(s) in the Superplay Entities are collateralized by pledges in favor of Larsen Capital, LLC ("Larsen Capital"), to the extent that Larsen Capital has a valid claim against the Debtor, as described below.

As of the date of this Disclosure Statement, the Debtor currently works as a real estate agent and also provides consulting services related to his industry experience. The Debtor provides those consulting services through J Frank Consulting, LLC ("JFC"), which is an entity owned solely by the Debtor's non-filing spouse, Joyce Frank ("Joyce").

## B.    Significant Events During the Bankruptcy Case

This case was filed on April 26, 2019 (the "Petition Date"). The Debtor has since been diligently working with his secured and unsecured creditors, in an attempt to come to a consensual Plan.

The Debtor retained Zach B. Shelomith, Esq. and Leiderman Shelomith Alexander + Somodevilla, PLLC ("LSAS"), as his bankruptcy counsel, on May 19, 2019, *nunc pro tunc* to the Petition Date [ECF No. 22]. On May 31, 2019, the Court authorized LSAS's employment as the Debtor's counsel, *nunc pro tunc* to the Petition Date [ECF No. 42]. The Debtor retained his accountant, Alan Fyne and Dinnall Fyne & Company Inc. ("DFC") on May 19, 2019, *nunc pro tunc* to the Petition Date [ECF No. 23]. On May 31, 2019, the Court authorized DFC's employment as the Debtor's accountant, *nunc pro tunc* to the Petition Date [ECF No. 43].

On August 15, 2019, the Debtor filed the Debtor's Expedited Motion to (A) Approve Sale of Real Property, Free and Clear of Liens, Claims and Encumbrances; (B) Authorize Debtor to Enter into Contract for Sale of Real Property; and (C) Approve Payment of Commission to Broker and Debtor from Closing Proceeds [ECF No. 84] (the "Motion to Approve Sale"). By virtue of the Motion to Approve Sale, the Debtor sought to sell his real property located at 392 Eagle Dr, Jupiter, FL 33477 (the "Eagle Drive Property"). The Debtor also filed ancillary motions related to the Motion to Approve Sale and the Eagle Drive Property [*see* ECF Nos. 76, 78, 85 and 86].

Objections were filed to the Motion to Approve Sale [*see* ECF Nos. 100 and 103]. Significant negotiations ensued by and between counsel for the Debtor, Larsen Capital, Investors Bank and The Bancorp Bank ("Bancorp") (who are among the largest creditors in this bankruptcy proceeding), at the hearing on the Motion to Approve Sale on September 5, 2019. Ultimately, these parties resolved any and all differences relating to the Motion to Approve Sale, which resulted in an Order Granting Debtor's Expedited Motion to (A) Approve Sale of Real Property, Free and Clear of Liens, Claims and Encumbrances; (B) Authorize Debtor to Enter into Contract for Sale of Real Property; and (C) Approve Payment of Commission to Broker and Debtor from Closing Proceeds [ECF No. 111] (the "Eagle Drive Property Sale Order").

The Eagle Drive Property Sale Order approved the sale of the Eagle Drive Property, and set forth how the gross sales proceeds, which totaled $6,150,000.00, were to be distributed. Ultimately, Professional Bank, which held a first mortgage against the Eagle Drive Property (see Claim # 24-1), was paid in full (on account of its first mortgage against the Eagle Drive Property), and amounts were also made to Larsen Capital, Bancorp and Investors Bank [*see* ECF No. 111]. The Debtor was paid a real estate commission in the amount of $49,200.00, on account of being the listing agent for the sale through The Sheehan Agency, which also received its share of the real estate commission, pursuant to the Eagle Drive Property Sale Order. However, after payments of these amounts, there were no net proceeds available to the Debtor, on account of his ownership interest in the Eagle Drive Property. Nevertheless, the sale of the Eagle Drive Property satisfied numerous obligations, was in the best interest of the bankruptcy estate, and the Debtor was able to avoid the ongoing and significant cost and maintenance of retaining the Eagle Drive Property.

Thereafter, the Debtor endeavored to negotiate with numerous of his creditors, including those creditors who alleged that their claims should be deemed non-dischargeable, pursuant to 11 U.S.C. § 523. The Debtor was ultimately able to resolve all such non-dischargeable claims, and the settlement(s) relating thereto either have been filed with the Court or will be filed with the Court for approval forthwith.

During this time period, the Debtor also worked with his accountant in completing all necessary tax returns and preparing the Five Year Cash Flow Projections, which are attached hereto as Exhibit "A". Finally, the Debtor, through counsel, also objected to numerous claims [*see* ECF Nos. 176, 177, 178 and 179], most of which have either been resolved or adjudicated by this Court [*see* ECF Nos. 187, 198, 199, 200 and 201].

On April 21, 2020, the Debtor filed his Plan, which provides for certain payments and treatment to secured, priority unsecured and general unsecured creditors. Additional information regarding the significant events of this bankruptcy case can be found by reviewing the docket on CM/ECF.

The Debtor believes that the Plan is feasible and provides all of his disposable income for a five-year period to his general unsecured creditors. A detailed description of the Debtor's income, expenses and proposed payment to creditors is contained in the Debtor's Five-Year Cash Flow Projections (including the Debtor's significant assumptions thereto), attached as Exhibit "A".

### C.    Projected Recovery of Avoidable Transfers

The Debtor conducted an analysis of all transfers made in the four (4) years preceding the Petition Date, primarily by reviewing his bank statements for this time period. After analysis, the Debtor does not believe that any preference, fraudulent conveyance, or other avoidance actions exist, other than the Claims Against Larsen, identified below.

### D.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article IV of the Plan.

### E.    Current and Historical Financial Conditions

The identity and fair market value of the Debtor's assets are listed in the Debtor's Schedules [ECF No. 1]. Further information can also be reviewed in the Debtor's various Monthly Operating Reports, which are filed of record in this proceeding, and available upon request to the Debtor's counsel. Additionally, the Debtor's Schedules are available upon request to the Debtor's counsel. The Debtor's Five-Year Cash Flow Projections and Significant Assumptions are set forth in Exhibit "A". A Liquidation Analysis is set forth in Exhibit "B".

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.    **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Debtor has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under 11 U.S.C. § 507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, if any. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The Debtor requests that the Court set an administrative claims bar date of fifteen (15) days after the date of confirmation of the Plan.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | Unknown | Paid in full on the Effective Date of the Plan, or according to terms of obligation, if later. The Debtor has been paying post-petition expenses in the normal course, and does not believe that any amounts are due and owing. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | N/A |
| Professional Fees, as approved by the Court. | Est. $150,000.00 | See below |
| Clerk's Office Fees | $0.00 | N/A |
| Other administrative expenses | $0.00 | N/A |

| Office of the U.S. Trustee Fees | Unknown | Paid in full on the Effective Date of the Plan. |
|---|---|---|
| TOTAL | Est. $150,000.00 | |

Treatment of administrative professional expenses:

| Administrative Professional Fees and Costs of Debtor's Professionals | The administrative professional fees and costs of the Debtor's attorneys and the Debtor's accountant are subject to final allowance by the Court, after the filing of the appropriate fee application(s) and notice and hearing.  The exact amount of such fees and costs will be determined at the Confirmation Hearing of the Plan.  Such fees and costs shall be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  To the extent that such fees and costs are not paid in full on the Effective Date of the Plan, in cash, then such administrative professional fees and costs shall be paid from the Additional Non-Exempt Funds described below.  Any administrative professional fees and costs that are incurred post-confirmation are not included herein and are not subject to the Court's approval. |
|---|---|
| Alleged Administrative Fees of the State of New Jersey Division of Taxation | The State of New Jersey Division of Taxation filed Claim # 32, in the amount of $50,000.00, asserting an administrative tax claim relating to FEC Towne, LLC.  The Debtor has filed an Objection to Claim [ECF No. 179] as to Claim # 32 on numerous grounds and does not believe that the State of New Jersey Division of Taxation is entitled to any administrative claim in this proceeding.  However, to the extent that the Court determines that the State of New Jersey Division of Taxation is, in fact, entitled to an administrative tax claim, then such claim shall be paid in full on the Effective Date of the Plan, in cash, or over a term of sixty (60) months from the Petition Date, or upon such other terms as may be agreed upon by the State of New Jersey Division of Taxation and the Debtor.  To the extent that such Allowed Administrative Expense Claim is not paid in full on the Effective Date of the Plan, in cash, then such Allowed Administrative Expense Claim shall be paid from the Additional Non-Exempt Funds described below. |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by 11 U.S.C. § 507(a)(8).  Unless the holder of such an 11 U.S.C. § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.  The Debtor does not believe that any § 507(a)(8) priority tax claims exist, except secured ad valorem priority tax claims under 11 U.S.C. § 507(a)(8)(B), which are treated as set forth in the Plan, described below.

3.    *United States Trustee Fees*

All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Specifically, the Debtor will pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of the Plan, within fourteen (14) business days of the entry of an order confirming the Plan.  Furthermore, the Debtor (as reorganized) will file with the Court post-confirmation Quarterly Operating Reports and pay the U.S. Trustee the appropriate sum

required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another Chapter under the U.S. Bankruptcy Code.

## C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. § 506.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 3A – Secured Claim of Professional Bank (first mortgage on real property) (Claim # 24)<br><br>**Total claim amount: $3,614,156.07 (secured = $3,614,156.07; unsecured = $0.00)** | Unimpaired | Class 3A, the Secured Claim of Professional Bank (first mortgage on real property), is unimpaired by the Plan.  This claim was secured by the real property located at 392 Eagle Dr, Jupiter, FL 33477 (the "Eagle Drive Property"), which was owned by the Debtor and his non-filing spouse, Joyce Frank ("Joyce").  The Eagle Drive Property was sold (the "Eagle Drive Property Sale"), pursuant to the Court's September 9, 2019 Order Granting Debtor's Expedited Motion to (A) Approve Sale of Real Property, Free and Clear of Liens, Claims and Encumbrances; (B) Authorize Debtor to Enter Into Contract for Sale of Real Property; and (C) Approve Payment of Commission to Broker and Debtor from Closing Proceeds [ECF No. 111] (the "Eagle Drive Property Sale Order").<br><br>This claim was completely paid and satisfied by virtue of the Eagle Drive Property Sale.  There was no unsecured deficiency.  Accordingly, this claim will be deemed paid in full and Professional Bank will not be entitled to a Class 7 General Unsecured Claim. |
| Class 3B – Secured Claim of Professional Bank (first mortgage on real property) (Claim # 25)<br><br>**Total claim amount: $308,450.11 (secured = $308,450.11;** | Unimpaired | Class 3B, the Secured Claim of Professional Bank (first mortgage on real property), is unimpaired by the Plan.  This claim is secured by the real property located at 183 Golf Village Blvd, Jupiter, FL 33458 (the "Golf Village Property"), which is owned solely by Joyce.  The Debtor is a co-obligor on the underlying Fixed-Adjustable Rate Note (the "Golf Village Note"), and Joyce is the mortgagor on the underlying Mortgage (the "Golf Village Mortgage"), joined by the Debtor. |

| | | |
|---|---|---|
| unsecured = $0.00) | | The Golf Village Note and Golf Village Mortgage are being paid in the ordinary course and the Debtor and Joyce are current in their obligations to Professional Bank under the Golf Village Note and Golf Village Mortgage. The Golf Village Note and Golf Village Mortgage shall remain in full force and effect and shall not be otherwise modified by virtue of the Plan. The Debtor and Joyce shall remain fully bound by the terms of the Golf Village Note and Golf Village Mortgage. Accordingly, Professional Bank will not be entitled to a Class 7 General Unsecured Claim. |
| Class 4 – Secured Claim of Larsen Capital, LLC (second mortgage on real property and pledge against securities) (Claim # 26)<br><br>**Total claim amount: $1,002,199.10 (secured = $1,002,199.10; unsecured = $0.00)** | Impaired | Class 4, the alleged Secured Claim of Larsen Capital, LLC ("Larsen Capital") (second mortgage on real property and pledge against securities) (the "Larsen Claim"), is impaired by this Plan. The alleged Larsen Claim was secured by the Eagle Drive Property, and if allowed, is further secured by pledges against the Debtor's interest(s) in: (a) Superplay Development Group, LLC ("Superplay Development") (whereby the Debtor owns 17.5% of the common shares of Superplay Development); and (b) Superplay, LLC ("Superplay") (whereby the Debtor owns 22.5% of the common shares of Superplay). (Superplay Development and Superplay shall hereinafter be defined as the "Superplay Entities").<br><br>With respect to Larsen Capital's secured claim against the Eagle Drive Property, the Eagle Drive Property Sale fully and completely satisfied Larsen Capital's secured claim against the Eagle Drive Property (pursuant to the Eagle Drive Property Sale Order), to the extent such Larsen Claim is allowed, and further fully and completely satisfied Larsen Capital's Post-Petition Loan, as identified and defined in the Court's Order Granting Debtor's Motion to Incur Post-Petition Debt [ECF No. 115]. Thereafter, after taking into account the sales proceeds received, Larsen Capital claimed to be owed the amount of $1,002,199.10, pursuant to the various loan documents attached to its Proof of Claim (Claim # 26). The Debtor disputes that Larsen Capital is owed such amounts. Such remaining Larsen Claim remains an alleged secured claim against the Superplay Entities.<br><br>To the extent that the Larsen Claim is allowed, then unless otherwise adjudicated by any subsequent Court order (or judgment), the Debtor will transfer his interest(s) in the Superplay Entities to Larsen Capital, in full and complete satisfaction and release of any and all amounts owed by the Debtor or Joyce Frank to Larsen Capital, and any further claim in this bankruptcy proceeding. Accordingly, upon such transfer, any allowed claim(s) owing to Larsen Capital will be deemed paid in full and Larsen Capital will not be entitled to a Class 7 General Unsecured Claim. Furthermore, by virtue of such transfer, in the event that such claim(s) are allowed, Larsen Capital will be paid in full, and shall release Joyce Frank of any and all liability, as well. This treatment shall not affect or release any Claims Against Larsen, as identified in ¶ |

  
| | | |
|---|---|---|
| | | 3.02 of the Plan, unless otherwise adjudicated by any subsequent Court order (or judgment).  Nothing stated herein shall act as a waiver of the Debtor's right to object to the Larsen Claim or make any other claim(s) against Larsen Capital (or any related individuals or entities). |
| **Class 5 – Secured Claim of NEC Financial Services, LLC (judgment lien on real property) (Claim # 10)**<br><br>**Total claim amount: $44,429.79 (secured = $0.00; unsecured = $44,429.79)** | Impaired | Class 5, the Secured Claim of NEC Financial Services, LLC ("NEC Financial Services") (judgment lien on real property), is impaired by the Plan.  This claim was secured by the Eagle Drive Property.  Pursuant to the Eagle Drive Property Sale Order, any holders of valid judgment liens against the Eagle Drive Property shall be treated as set forth in the Order Granting Debtor's Motion to Avoid Judicial Liens on Exempt Property [ECF No. 117] (the "Judicial Lien Order").<br><br>Pursuant to the Judicial Lien Order, the NEC Judgment Lien (as defined in the Judicial Lien Order) "shall attach to the Debtor's net proceeds of the sale of the [Eagle Drive Property]".  However, by virtue of the payments to various lienholders and other amounts set forth in ¶ 10 of the Eagle Drive Sale Order, there were no net proceeds of the sale available to the Debtor.  As such, NEC Financial Services has a wholly unsecured claim in this bankruptcy proceeding.  Accordingly, NEC Financial Services shall have an allowed general unsecured claim in the amount of $44,429.79 and shall be entitled to a Class 7 General Unsecured Claim in such amount. |

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in 11 U.S.C. §§ 507(a)(1), (4), (5), (6) and (7) are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing Debtor's priority unsecured claims and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 – Unsecured Priority Claim of the State of New Jersey – Division of Taxation Bankruptcy (Claim # 31)**<br><br>**Total priority claim amount: $214,740.71** | Unimpaired | Class 1, the Unsecured Priority Claim of the State of New Jersey – Division of Taxation Bankruptcy (the "State of New Jersey"), in the amount of $214,740.71, is unimpaired by the Plan.  The Debtor disputes the correct amount of the State of New Jersey's claim, and has filed an Objection to Claim [ECF No. 179], in order to establish the correct amount of the allowed unsecured priority claim, which remains pending.  The State of New Jersey will be paid in full (the full amount of its allowed unsecured priority claim), plus statutory interest, over 60 months from the Petition Date, in equal quarterly payments, which will begin on the first day of the month following the Effective Date of the Plan, and continue on the first day of every quarter thereafter.  The amount due to the |

| | | |
|---|---|---|
| | | State of New Jersey may be reduced during the Plan Period by any payment on account of any Additional Non-Exempt Funds, as described in ¶ 3.02 in the Plan. |
| Class 2 – Other Priority Claims | Unimpaired | Other than set forth above, no other undisputed, non-contingent and liquidated priority claims of a known amount have been scheduled by the Debtor, no other priority claims have been filed by any creditor, and the Debtor does not believe that any other priority claims exist.  However, in the event that it is determined by the Court that any additional priority claims do exist, then each holder of a Class 2 Priority Claim will be paid in full, over 60 months from the Effective Date, in 20 equal quarterly payments, which will begin on the first day of the month following the Effective Date of the Plan, and continue on the first day of every quarter thereafter. |

3. *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under 11 U.S.C. § 507(a).  The following chart identifies the Plan's proposed treatment of Class 6 General Unsecured Non-Dischargeable Claim of Investors Bank and Class 7 General Unsecured Creditors:

| Class | Impairment | Treatment |
|---|---|---|
| Class 6 – General Unsecured Non-Dischargeable Claim of Investors Bank (Claim # 9)<br><br>**Total claim amount: $3,158,046.46** | Impaired | Class 6, the General Unsecured Non-Dischargeable Claim of Investors Bank ("Investors"), is impaired by the Plan.  The claim is a general unsecured claim.  However, Investors asserted that the debt owed is non-dischargeable, pursuant to 11 U.S.C. § 523(a)(4) and (6) (the "Non-Dischargeability Claim").<br><br>The Debtor and Investors resolved the Non-Dischargeability Claim (the "Investors Bank Settlement"), and entered into a Settlement Agreement (the "Investors Settlement Agreement") such that Investors shall be entitled to the entry of a non-dischargeable agreed judgment (the "Judgment") in the amount of $300,000.00.  On April 16, 2020, the Debtor filed a Motion to Approve Settlement Between the Debtor, Joyce Frank and Investors Bank [ECF No. 216] (the "Investors Settlement Motion"), to obtain approval of the Investors Bank Settlement, which remains pending before the Court.<br><br>In order to satisfy the Judgment, Investors shall receive the total amount of $300,000.00, as set forth herein:<br><br>(a). The Judgment shall be satisfied upon Investors' receipt of the payments as set forth herein.  An initial payment of $112,000.00 (the "Initial Payment") shall be disbursed by Dilworth Paxson LLP ("Investors' Attorney") to Investors no later than the next business day following the entry of an Order granting the Investors Settlement Motion (the "Approval").  The remaining balance of $188,000.00 shall be |

treated as follows: (i) if the Debtor makes payment to Investors in the amount of $50,000.00 (the "September Payment") on or before September 30, 2020, the remaining balance ($138,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment identified and defined in ¶ (d) below; alternatively (ii) if the September Payment is not made to Investors on or before September 30, 2020, the Debtor can pay $63,000.00 (the "November Payment") to Investors on or before November 15, 2020, the remaining balance ($125,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment; or alternatively, (iii) if neither the September Payment nor the November Payment is made to Investors on or before the date(s) indicated above, the Debtor can pay $75,000.00 (the "December Payment") to Investors on or before December 31, 2020, the remaining balance ($113,000.00) of the Judgment shall be deemed satisfied, subject to the Larsen Payment (these payments shall collectively be defined as the "Discount Payments").  Upon any of the Discount Payments having cleared, and upon payment of any required Larsen Payment, or the expiration of the time period described in ¶ (h) below, the Judgment will be satisfied, and Investors will execute and record an appropriate Satisfaction of Judgment.  If none of the Discount Payments are made, then Investors shall be entitled to exercise all rights and remedies available to it as the holder of the Judgment against the Debtor, subject to ¶ (c) below.

(b). The Initial Payment shall be comprised of a contribution from Joyce in the amount of $112,000.00 (the "Deposit").

(c). If the Debtor timely makes any of the Discount Payments, then Investors will thereafter refrain from any post-judgment collection or execution remedies, and execution of the Judgment shall be expressly withheld, until payment of any required Larsen Payment, or the expiration of the time period described in ¶ (h) below, at which time the Judgment will be satisfied.  Furthermore, execution of the Judgment shall be expressly withheld until January 1, 2021, to allow for the Debtor to make any of the Discount Payments.

(d). In addition to the Discount Payments referenced above, the first $125,000.00  received or recovered (net, after payment of any of the Debtor's attorneys' fees and costs incurred in obtaining the Larsen Payment) by the Debtor (directly or indirectly, including to any relative or entity in which the Debtor has an interest) from Larsen Capital, LLC (directly or indirectly, including personally from Jeffrey Larsen or from any entity that Jeffrey Larsen has an interest) (collectively "Larsen"), for any reason whatsoever, including without limitation, collection of any judgment against Larsen or any settlement payment(s) from Larsen (the "Larsen Payment"), within three (3) years from the Approval date, shall be paid to Investors, upon receipt of same. Any Larsen Payment applied to fund a Discount Payment is addressed in

¶ (f) and ¶ (g) below.

(e). If any settlement is reached (within that three (3) year period) between the Debtor and Larsen for payment of a Larsen Payment within that three (3) year time period or thereafter, that Larsen Payment shall be paid to Investors upon receipt. Any Larsen Payment applied to fund a Discount Payment is addressed in ¶ (f) and ¶ (g) below.  Investors agrees not to object to any settlement reached by and between the Debtor and Larsen, no matter the amount,  as long as the Debtor otherwise complies with this Settlement, that settlement with Larsen is reasonable under all then pertinent circumstances and was reached in good faith. Debtor will keep Investors apprised of and shall promptly respond to any inquiries by Investors about the status of efforts by the Debtor and his counsel to obtain the Larsen Payment.

(f). If Larsen contributes $50,000.00 towards any Discount Payment, then: (i) $12,000 of that Larsen contribution for the September Payment shall not be applied as a Larsen Payment; (ii) $17,000.00 of that Larsen contribution for the November Payment shall not be applied as a Larsen Payment; and (iii) $22,000.00 of that Larsen contribution for the December Payment shall not be applied as a Larsen Payment.

(g). If Larsen contributes any amount less than $50,000.00 towards any Discount Payment, then such payment(s) shall specifically be excluded from the Larsen Payment and applied to the Discount Payment by the following formula: 30% for any amount between $40,000.00 to $49,999.99; 27.5% for any amount between $30,000.00 to $39,999.99;  25% for any amount between $20,000.00 to $29,999.99;  22.5% for any amount between $10,000.00 to $19,999.99;  and 20% for any amount between $0.00 to $9,999.99.

(h). If one of the Discounts Payments has been paid and the Larsen Payments are received during the time periods specified in ¶ (e), then the remainder of the Judgment will be satisfied.  In such case, Investors shall fully release the Debtor from all residual claims relating to the Judgment.

(i). Effective upon the Approval, the Debtor hereby releases, acquits and forever discharges Investors and each, every and all of its current and past officers, directors, shareholders, affiliated corporations, subsidiaries, agents, employees, representatives, attorneys, predecessors, successors and assigns, of and from any and all claims, damages, causes of action, suits and costs, of whatever nature, character or description, whether known or unknown, anticipated or unanticipated (collectively the "Investors Released Parties"), which the Debtor has, may now have or may hereafter have or claim to have against any of the Investors Released Parties.

| | | |
|---|---|---|
| | | Investors shall only be entitled to the payments set forth herein and shall not be entitled to any additional payment as a general unsecured creditor.  Investors shall not be entitled to a Class 7 General Unsecured Claim.<br><br>Any and all other terms of the Investors Settlement Agreement are incorporated herein by reference.  The Debtor and Investors shall comply with all of the terms of the Investors Settlement Agreement (or any Court-approved amendments and/or modifications thereto). |
| **Class 7 - General Unsecured Creditors**<br><br>**Total General Unsecured Claims: $25,503,163.78** | Impaired | Class 7 consists of all allowed dischargeable general unsecured claims.  The Class 7 Creditors shall share *pro rata* in a total distribution in the amount of $200,000.00 (the "Plan Payments"), to be paid over a period of time of 60 months.<br><br>Any allowed dischargeable unsecured or undersecured general claimant scheduled to receive a total distribution of $250.00 or less shall be paid in a lump sum within sixty (60) days from the Effective Date.  The Debtor estimates that the lump sum payment(s) will total $801.71.<br><br>Any allowed dischargeable general unsecured claimants scheduled to receive a total distribution of more than $250.00 shall receive payment over 5 years, in 20 quarterly payments, with the first payment due on the first day of the month following the Effective Date of the Plan, and continuing on the first day of every quarter thereafter (the "Plan Period").<br><br>The specific creditors to be paid under the Plan (as well as a payment schedule) are set forth in the List of General Unsecured Creditors to be Paid Pursuant to Plan, attached as Exhibit "A" (the "Creditor Payment List") to the Plan.  At the time of the filing of the Plan, the Creditor Payment List is merely an estimate provided by the Debtor, as numerous Objections to Claims are pending as of the date of the Plan, and the Debtor may object to additional claim(s) before the expiration of any deadline to do so.  Within 15 days after the later of the date of the entry of a final, non-appealable order confirming the Plan (or any amended Plan), or the date that the last remaining Objection(s) to Claim(s) are adjudicated by the entry of a final, non-appealable order, the Debtor shall file with the Court a final Creditor Payment List, which shall provide for the actual payments to be received by each creditor under the Plan.<br><br>At the time of the filing of the Plan, the Debtor estimates that the total amount of dischargeable general unsecured claims is $25,503,163.78 and that the quarterly payments will total $9,959.91 per payment.  Accordingly, the Debtor estimates that dischargeable general unsecured creditors will be receiving a distribution of approximately 0.7842% of their allowed claim(s). |

The Debtor's scheduled unsecured claims are set forth in his Schedules D and F [ECF No. 1],

as amended [ECF Nos. 144 and 197]. Attached as Exhibit "A" to the Plan is a list of all general unsecured claims to be paid under the Plan, including the proposed distribution and proposed first dividend(s). The aggregate amount of claims included in Class 7 is $25,503,163.78, subject to the provisions of ¶ 3.02 of the Plan.

Based upon the distribution amount of $200,000.00, holders of allowed general unsecured claims will receive a distribution of 0.7842%. This distribution is higher than what holders of allowed general unsecured claims would receive in a hypothetical Chapter 7, in which case the Debtor estimates that such claimants would receive a distribution of 0.00%.

Notice to Class 7 General Unsecured Creditors. Pursuant to 11 U.S.C. § 1129(a)(15), if you object to confirmation to the Plan, the value of the property to be distributed under the Plan shall not be less than the projected disposable income of the Debtor (as defined in 11 U.S.C. § 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan (or during the period for which the Plan provides payments, whichever is longer). Pursuant to the Plan, the value of the property to be distributed to Class 7 General Unsecured Creditors under the Plan ($200,000.00) is equal to the projected disposable income of the Debtor to be received during the 5-year period beginning on the Effective Date.

4.  *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. Since the Debtor is an individual, he is the equity interest holder. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class | Impairment | Treatment |
|---|---|---|
| Class 8 - Equity Interest of the Debtor | Unimpaired | Class 8 consists of the Debtor's interest in property of the estate, which is retained under the Plan. The Debtor has committed the value of 5 years of his projected household net disposable income toward funding the Plan and has otherwise met all of the requirements under the Bankruptcy Code. Class 8 is presumed to accept the Plan and not entitled to vote. |

D.  **Means of Implementing the Plan**

The means necessary for the execution of the Plan include the following: (a) the Debtor's income from his employment with J Frank Consulting, LLC ("JFC"), an entity owned solely by the Debtor's non-filing spouse, Joyce Frank; and (b) the Additional Non-Exempt Funds, defined below. Specifically, in addition to the Plan Payments referenced above, creditors may receive additional amounts from additional sources, as described below.

1.  *Debtor's Commission from Sale of Eagle Drive Property Sale*

Pursuant to the Eagle Drive Property Sale Order, the Debtor, as a real estate sales associate of The Sheehan Agency, was entitled to a share of the underlying real estate commission, in the amount of $49,000.00, which was required to be held in Debtor's counsel's trust account, to be held in escrow as property of the bankruptcy estate, pursuant to 11 U.S.C. § 541, pending further Court order (the "Eagle Drive Commission"). The Debtor's counsel is holding the Eagle Drive Commission

in its attorney trust account.

### 2. Debtor's Share of 2017 and 2018 Federal Income Tax Return

Pursuant to the Court's February 10, 2020 Order Granting Debtor's Motion for Authority to Allow the Division and Reimbursement of the Tax Refund to Debtor's Non-Filing Spouse [ECF No. 172], upon receipt of the Debtor's and Joyce's 2017 and 2018 Federal Income Tax Refund, the Debtor is authorized to release to Joyce her share of the 2017 and 2018 Federal Income Tax Refund, based on the proportional W-2 withholdings. The Debtor's share of the 2017 and 2018 Federal Income Tax Refund (the "Debtor's Tax Refund") would be property of the bankruptcy estate, pursuant to 11 U.S.C. § 541.

### 3. Non-Exempt Portion of Debtor's Claim in New Jersey Bankruptcy Cases

On December 19, 2018, several entities for which the Debtor was previously affiliated with filed Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the District of New Jersey. The debtors are *Frank Theatres Bayonne/South Cove, LLC, et al.*, Case No. 2:18-bk-34808-SLM (the "New Jersey Bankruptcy Cases"). The Debtor timely filed a Proof(s) of Claim in the New Jersey Bankruptcy Cases, based upon, among other things, unpaid wages and unreimbursed expenses (collectively, the "New Jersey Bankruptcy Claim"). The amount of the New Jersey Bankruptcy Claim is $1,462,916.00. It is currently unknown whether the Debtor will receive any distribution on account of the New Jersey Bankruptcy Claim, and if so, the amount of such distribution.

The Debtor claimed as exempt a portion of the New Jersey Bankruptcy Claim in this bankruptcy proceeding, pursuant to Fla. Stat. § 222.11. The New Jersey Bankruptcy Cases were filed on December 19, 2018. As such, 6 months of wages prior to the filing of this bankruptcy proceeding would consist of wages from October 26, 2018 to December 19, 2018, a period of 54 days. At a salary of $225,000 per year, the exempt portion of the New Jersey Bankruptcy Claim would be $33,287.76 (the "Exempt New Jersey Bankruptcy Claim").

Accordingly, to the extent that there is any distribution(s) to the Debtor in the New Jersey Bankruptcy Case, the first $33,287.76 would constitute the Debtor's exempt wages and be comprised of the Exempt New Jersey Bankruptcy Claim. Any and all distribution(s) in excess of the Exempt New Jersey Bankruptcy Claim would be non-exempt and would be property of the bankruptcy estate, pursuant to 11 U.S.C. § 541 (hereinafter defined as the "Non-Exempt New Jersey Bankruptcy Claim").

### 4. Claims Against Larsen Capital, LLC

During the course of this bankruptcy proceeding, the Debtor discovered that he and Joyce may have certain claims against Larsen Capital, LLC (directly or indirectly, including personally from Jeffrey Larsen or from any entity that Jeffrey Larsen has an interest) (collectively, the "Claims Against Larsen"). The recovery of any *net* Claims Against Larsen would first be distributed as set forth in ¶ 3.01 in the Plan, to Investors. Thereafter, any and all remaining funds from any Claims Against Larsen, whether obtained through judgment or settlement, which belong to the Debtor, would be non-exempt and would be property of the bankruptcy estate, pursuant to 11 U.S.C. § 541.

5.    *Liquidation of the Superplay Entities*

To the extent that the Larsen Claim is disallowed, then the Debtor's interest in the Superplay Entities would be unencumbered.  In that case, the Debtor shall liquidate his interest(s) in the Superplay Entities for the benefit of the bankruptcy estate.  Any such amounts (including any dividends received on account of the Debtor's ownership interest(s) in the Superplay Entities until such interests are liquidated) would be non-exempt and would be property of the bankruptcy estate, pursuant to 11 U.S.C. § 541.

The Eagle Drive Commission, the Debtor's Tax Refund, the Non-Exempt New Jersey Bankruptcy Claim, the *net* Claims Against Larsen (after payment to Investors as set forth above) and the amounts received on account of the Debtor's ownership interest(s) in the Superplay Entities shall hereinafter be defined as the "Additional Non-Exempt Funds".  Any Additional Non-Exempt Funds shall first go to pay any allowed administrative expense claims, including without limitation, any allowed Administrative Expense Claims for the Debtor's professional fees and costs.  After payment in full of all allowed Administrative Expense Claims, to the extent that any Additional Non-Exempt Funds remain, such Additional Non-Exempt Funds shall go to pay any Class 1 and Class 2 Unsecured Priority Claims.  After payment of any Class 1 and Class 2 Unsecured Priority Claims, if such claims are not completely satisfied by virtue of the Additional Non-Exempt Funds, then the Debtor shall re-calculate the remaining balance(s) due, such that these balances are paid on a quarterly basis within the time frame(s) described above.

After payment in full of all allowed Administrative Expense Claims and Class 1 and Class 2 Unsecured Priority Claims, to the extent that any Additional Non-Exempt Funds remain, such Additional Non-Exempt Funds shall go to pay Class 7 General Unsecured Creditors, on a pro-rata basis.  Such distribution shall be in addition to the Plan Payments referenced above.  The Debtor shall provide notice to Class 7 General Unsecured Creditors that such payments are in the nature of Additional Non-Exempt Funds, rather than a Plan Payment(s).

The Debtor shall, and believes he can, generate sufficient income to the amount necessary to enable him to make all payments due under the Plan.  The Debtor's net income is described in detail in his Five-Year Cash Flow Projections, attached hereto as Exhibit "A", demonstrating that the Plan Payments are feasible.  The estimated cash on hand necessary as of the Effective Date of the Plan is $101,702.20 (minus any allowed Administrative Expense Claims that have already been paid prior to the Effective Date of this Plan).

To the extent that the Debtor wishes to prepay any amounts due under the Plan from exempt assets or other third party sources, the Debtor reserves the right to do so without penalty and to seek the entry of a final decree closing this case.  In that case, the Plan Period, as defined above, shall be shortened to such time that the Debtor pays all Class 1, 2, 6 and 7 creditors all amounts due under the Plan.

The Debtor, as reorganized, will retain and will be re-vested in all property of the Estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to the Plan and property transferred to Creditors of the Debtor pursuant to the expressed terms hereof.  The retained property shall be used by the Debtor in the ordinary course of his personal affairs.

E.    **Risk Factors**

The proposed Plan has the following risks:

- The Debtor's projections as to his income are speculative and based on historical data and projected transactions.  There is no guarantee that the projected income will remain as proposed for the next 5 years.  The Debtor has provided his best estimate, based on historical income and current factors.

- Failure to Satisfy Vote Requirement - the Debtor is seeking the affirmative vote of at least one class of creditors.  If the Plan does not receive sufficient votes for confirmation pursuant to 11 U.S.C. § 1129(a), then the Plan cannot be confirmed.

- Natural hazards, including pandemics, extreme weather conditions, such as hurricanes, etc., which could cause severe damage to the Debtor's consulting business, and which could have an impact on the Debtor's ability to maintain the cash flow projected in Exhibit "A".

- The Plan May Not Be Accepted or Confirmed – while the Debtor believes that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there is no assurance that the Bankruptcy Court will find the Plan to be confirmable.  If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval, but there is also no assurance that an alternative plan would be confirmed, that the case will not be converted to a Chapter 7 proceeding, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the creditors and the Debtor as the terms of the Plan.

F.    **Executory Contracts and Unexpired Leases**

Upon information and belief, as of the date of the Plan, the Debtor does not have any executory contracts or unexpired leases.  In the event that it is determined that the Debtor is, in fact, a party to an executory contract or an unexpired lease, then the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases, existing or before the date of the order confirming the Plan, upon the Effective Date of the Plan.  If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming the Plan.*  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.    **Tax Consequences of Plan**

*Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

**IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in 11 U.S.C. §§ 1129(a) or (b).  These include the requirements that: the Plan must be proposed in good faith; at least one impaired

class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Debtor believes that Classes 4, 5, 6 and 7 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Debtor believes that Classes 1, 2, 3A, 3B and 8 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.    *What Is an Allowed Claim?*

Only a creditor with an allowed claim has the right to vote on the Plan.  Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated; or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim.  When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Fed. R. Bankr. P. 3018(a).

***Any Creditor (other than a governmental unit) whose claim or interest is not scheduled or is scheduled as disputed, contingent or unliquidated was required to file a proof of claim on or before July 25, 2019 [see ECF No. 44].***

2.    *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in 11 U.S.C. § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.    *Who is **Not** Entitled to Vote*

The holders of the following five types of claims are *not* entitled to vote:

•    holders of claims that have been disallowed by an order of the Court;

•    holders of other claims that are not "allowed claims"" (as discussed above), unless they have been "allowed" for voting purposes.

•    holders of claims in unimpaired classes;

- holders of claims entitled to priority pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3) and (a)(8); and

- holders of claims in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in this Disclosure Statement.

### 1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by 11 U.S.C. § 1129(b). A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims if it meets all the requirements for consensual confirmation except the voting requirements of 11 U.S.C. § 1129(a)(8), does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.***

### C. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. This estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's non-exempt property. The

Debtor's real property is undersecured and has no equity.  The Debtor's non-exempt personal property is valued at $68,492.50, based on the values set forth in the Debtor's bankruptcy schedules and current funds being held in the Debtor's Debtor-in-Possession Account(s).  After deducting estimated Chapter 11 administrative expenses, as well as anticipated Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of $0.00 if this case were converted to a Chapter 7 liquidation.  A more detailed liquidation analysis is set forth in the attached Exhibit "B".

**The Superplay Entities**.  As stated above, the only companies for which the Debtor has an ownership interest, which were actively engaged in business prior to the COVID-19 pandemic, were: (a) Superplay Development (whereby the Debtor owns 17.5% of the common shares of Superplay Development); and (b) Superplay (whereby the Debtor owns 22.5% of the common shares of Superplay).  The Debtor does not currently derive any income from the Superplay Entities.  The Debtor's interest(s) in the Superplay Entities are collateralized by pledges in favor of Larsen Capital, to the extent that Larsen Capital has a valid claim against the Debtor, as described herein.

Superplay operates a family entertainment center, which is currently closed due to the COVID-19 pandemic.  It is unknown if or when it will reopen.  Superplay Development owns the real property where the family entertainment center is located. Upon information and belief, Superplay Development is not currently receiving any income, due to the fact that its tenants are unable to pay rent.  Superplay Development's real property is encumbered by a first mortgage in the approximate amount of $5,265,000 and a second mortgage in the approximate amount of $350,000.  Furthermore, Superplay Development is obligated to pay its preferred stockholders the approximate amount of $650,000, prior to any distribution to common stockholders, including the Debtor.  As stated above, the Debtor has a minority interest in the Superplay Entities.

Based upon the current economic situation at the time of the filing of this Disclosure Statement, the Debtor and the Debtor's accountant both believe that the value of the Debtor's interest(s) in the Superplay Entities are nominal, at best, and not worth any substantial value to any third parties, except potentially the other shareholder(s) of the Superplay Entities.  Attached to the Liquidation Analysis, which is attached hereto as Exhibit "B", is a letter from the Debtor's accountant regarding the valuation of the Superplay Entities.

Accordingly, creditors are receiving more by virtue of the Plan than they would if the Debtor's case were a Chapter 7 proceeding.

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation or reorganization is proposed in the Plan.

The Debtor has carefully prepared the 5 Year Projections attached as Exhibit "A", based on historical data and projected transactions.  The Debtor believes that the Plan is feasible and that his income will be sufficient to make all of the payments set forth in the Plan.

1.    *Ability to Initially Fund Plan*

The Debtor believes that he will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2.    *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Debtor must also show that he will have enough cash over the life of the Plan to make the required Plan payments.

The Debtor has provided projected financial information.  Those projections are listed in Exhibit "A".  The Debtor's financial projections show that he will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of approximately $13,190.26.  The final Plan payment is expected to be paid on or around September 1, 2025 for Class 1, 2, 6 and 7 creditors.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5).  The Debtor will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523, except as provided in Fed. R. Bankr. P. 4007(c).

### B.    Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C.    Final Decree

Once the estate has been fully administered, as provided in Fed. R. Bankr. P. 3022, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.  The Debtor reserves the right to request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, so that it may be reopened

upon the payment of the last payment under the Plan to holders of Class 1 and 6 claims, and so that the Debtor may receive his Discharge at that time.

## VI.    OTHER PLAN PROVISIONS

A.    **Reservation of Rights Under 11 U.S.C. § 1129(b)**.  The Debtor expressly reserves the right, pursuant to 11 U.S.C. § 1129(b), to request the Court to confirm the Plan if all of the applicable requirements of 11 U.S.C. § 1129(b) have been met, other than those of 11 U.S.C. § 1129(a)(8).

B.    **Reservation of Right to Modify Plan Post-Confirmation**.  The Debtor expressly reserves the right to request a modification of the Plan at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan. Any such request to modify the Plan shall be noticed to all creditors and interested parties, and no modification shall be granted absent proper notice and hearing.

C.    **Reservation of Rights Under Sections 1141(d)(5) and 350(a)**.  The Debtor reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment(s) under the Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns.  Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties.  If such request is granted, then upon the satisfaction of all payments required to be paid to Class 1, 2, 6 and 7 creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).  <u>This paragraph only preserves the Debtor's right to seek the relief described above and does not conclusively grant such relief.  Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by the Debtor after confirmation</u>.

D.    **Disbursing Agent**.  All distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.  A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.

E.    **Post-Petition Interest on Claims**.  Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

F.    **Default of Plan Payment(s)**.  The Plan provides for a ten (10) day notice period before the Debtor can be held in default of any payment due under the Plan.  Please carefully read ¶ 3.03 of the Plan for more information regarding the consequences of the Debtor's default of any Plan payment(s).

G.    **Delivery of Distributions and Undeliverable Distributions**.  Subject to Fed. R. Bank. P. 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of

the Debtor or his agents, or in a letter of transmittal, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to any holder is returned as an "Undeliverable or Returned Distribution", then no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtor or not; (b) returned to the Debtor because the Claimant cannot locate an account number belonging to the Debtor, despite the Debtor's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Debtor because the Claimant is no longer operating and has not provided the Debtor or the Court with any assignment information; or (d) returned to the Debtor because the Claimant indicates in writing that the Claimant does not wish to receive any distribution under the Plan and therefore waives any right to payment.

All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made. Thereafter, the amount represented by such Undeliverable or Returned Distribution shall be donated by the Debtor to the Bankruptcy Bar Association of the Southern District of Florida, Inc., a legal non-profit organization. At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor and his property.

H.    **Time Bar to Cash Payments.**  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall be donated by the Debtor to the Bankruptcy Bar Association of the Southern District of Florida, Inc. At such time, any Claim in respect of such voided check shall be discharged and forever barred.

The Debtor believes that Confirmation of the Plan is in the best interests of the creditors and the Estate because confirmation of the Plan will enable Claimholders to receive higher distributions under the Plan than they would in the event the case were converted to Chapter 7. Therefore, the Debtor urges all holders of impaired claims to cast a ballot voting in favor of the Plan on or before

Dated:  April 21, 2020

Respectfully submitted,

Bruce Steven Frank

By:    /s/ Zach B. Shelomith
        ZACH B. SHELOMITH, ESQ.
        Attorney for the Debtor

Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

**Attached Exhibits:**

**Exhibit "A"** – Five Year Cash Flow Projection

**Exhibit "B"** – Liquidation Analysis

# EXHIBIT "A"

# DEBTOR'S FIVE YEAR CASH FLOW PROJECTIONS AND ACCOUNTANT'S ASSUMPTIONS

BRUCE STEVEN FRANK

CASE # 19-15509-BKC-EPK

| | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
| 2 | **INCOME SOURCES** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 3 | Distributions from Frank Consulting Services LLC | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 | $ 8,275.65 |
| 4 | Management Fee Bruce Frank | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 |
| 5 | **Gross Cash Flow** | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 | $ 18,275.65 |
| 6 | | | | | | | | | | | | |
| 7 | General Federal Taxes Owed | | | | | | | | | | | |
| 8 | 2018 Refund held by IRS | | | | $ 46,494.00 | | | | | | | |
| 9 | | | | | | | | | | | | |
| 10 | Housing Costs-PITI-Spouses Residence | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 |
| 11 | HOA Fees | $ 833.33 | $ 833.33 | $ 833.33 | $ 833.33 | $ 833.33 | $ 833.33 | $ 833.33 | $ 833.33 | $ 833.33 | $ 833.33 | $ 833.33 |
| 12 | Mandatory Membership Fees | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 | $ 2,666.67 |
| 13 | **Total Fixed Housing Costs** | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 | $ 6,433.00 |
| 14 | | | | | | | | | | | | |
| 15 | Medical Insurance | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 |
| 16 | Prescriptions | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 |
| 17 | Food and Household Items | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 |
| 18 | Electric | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 |
| 19 | Water | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 |
| 20 | Cable | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 | $ 80.00 |
| 21 | Internet and Home Phone | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 | $ 250.00 |
| 22 | Trustee Fees | $ 650.00 | | | $ 650.00 | | | | | | | |
| 23 | Administrative Fees- Professionals | $ 90,000.00 | | | | | | | | | | |
| 24 | Legal Fees Post Confirmation | | | | | | | | | | | |
| 25 | Auto | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 |
| 26 | | | | | | | | | | | | |
| 27 | **Total Expenses Paid Personally** | $ 102,468.00 | $ 11,818.00 | $ 11,818.00 | $ 12,468.00 | $ 11,818.00 | $ 11,818.00 | $ 11,818.00 | $ 11,818.00 | $ 11,818.00 | $ 11,818.00 | $ 11,818.00 |
| 28 | | | | | | | | | | | | |
| 29 | **NET CASH FLOW TO SERVICE DEBT AND PLAN** | $ (84,192.35) | $ 6,457.65 | $ 6,457.65 | $ 52,301.65 | $ 6,457.65 | $ 6,457.65 | $ 6,457.65 | $ 6,457.65 | $ 6,457.65 | $ 6,457.65 | $ 6,457.65 |
| 30 | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | |
| 32 | **Cash Beginning Balance** | $ 101,702.20 | $ 5,184.90 | $ 11,642.55 | $ 18,100.19 | $ 58,878.60 | $ 15,336.25 | $ 21,793.90 | $ 16,728.31 | $ 23,185.96 | $ 29,643.60 | $ 24,578.01 |
| 33 | | | | | | | | | | | | |
| 34 | **State of New Jersey** | $ 1,563.33 | | | $ 1,563.33 | | | $ 1,563.33 | | | $ 1,563.33 | |
| 35 | **Class 6-Investors Bank** | | | | | $ 50,000.00 | | | | | | |
| 36 | **Class 7- General Unsecured** | $ 10,761.62 | | | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 | |
| 37 | | | | | | | | | | | | |
| 38 | Net Cash | $ 5,184.90 | $ 11,642.55 | $ 18,100.19 | $ 58,878.60 | $ 15,336.25 | $ 21,793.90 | $ 16,728.31 | $ 23,185.96 | $ 29,643.60 | $ 24,578.01 | $ 31,035.66 |

Exhibit "A"

BRUCE STEVEN FRANK

SIXTY MONTH

CASH FLOW PROJECTIONS

CASE # 19-15509-BKC-EPK

| | M | N | O | P | Q | R | S | T | U | V | W | X | Y | Z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
| 2 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 3 | $ 8,275.65 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,523.92 | $ 8,779.64 |
| 4 | $ 10,000.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,300.00 | $ 10,609.00 |
| 5 | $ 18,275.65 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 18,823.92 | $ 19,388.64 |
| 6 | | | | | | | | | | | | | | |
| 7 | $ (18,360.00) | | | | $ (9,433.68) | | | $ (9,433.68) | | $ (9,433.68) | | | $ (9,433.68) | |
| 8 | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | |
| 10 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 |
| 11 | $ 833.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 858.33 | $ 884.08 |
| 12 | $ 2,666.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,746.67 | $ 2,829.07 |
| 13 | $ 6,433.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,538.00 | $ 6,646.15 |
| 14 | | | | | | | | | | | | | | |
| 15 | $ 1,250.00 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,287.50 | $ 1,326.13 |
| 16 | $ 150.00 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 154.50 | $ 159.14 |
| 17 | $ 2,500.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,575.00 | $ 2,652.25 |
| 18 | $ 300.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 309.00 | $ 318.27 |
| 19 | $ 130.00 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 133.90 | $ 137.92 |
| 20 | $ 80.00 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 | $ 84.87 |
| 21 | $ 250.00 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 257.50 | $ 265.23 |
| 22 | | | | | | | | $ - | | | | | | |
| 23 | | | | | | | | | | | | | | |
| 24 | | | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 |
| 25 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 |
| 26 | | | | | | | | | | | | | | |
| 27 | $ 11,818.00 | $ 12,062.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,562.80 | $ 12,814.94 |
| 28 | | | | | | | | | | | | | | |
| 29 | $ (11,902.35) | $ 6,761.12 | $ 6,261.12 | $ 6,261.12 | $ (3,172.56) | $ 6,261.12 | $ 6,261.12 | $ (3,172.56) | $ 6,261.12 | $ (3,172.56) | $ 6,261.12 | $ 6,261.12 | $ (3,172.56) | $ 6,573.69 |
| 30 | | | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | | | |
| 32 | $ 31,035.66 | $ 19,133.31 | $ 14,371.19 | $ 20,632.30 | $ 26,893.42 | $ 12,197.62 | $ 18,458.74 | $ 24,719.86 | $ 10,024.05 | $ 16,285.17 | $ 13,112.61 | $ 7,850.49 | $ 14,111.61 | $ 10,939.04 |
| 33 | | | | | | | | | | | | | | |
| 34 | | $ 1,563.33 | | | $ 1,563.33 | | | $ 1,563.33 | | | $ 1,563.33 | | | $ 1,563.33 |
| 35 | | | | | | | | | | | | | | |
| 36 | | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 |
| 37 | | | | | | | | | | | | | | |
| 38 | $ 19,133.31 | $ 14,371.19 | $ 20,632.30 | $ 26,893.42 | $ 12,197.62 | $ 18,458.74 | $ 24,719.86 | $ 10,024.05 | $ 16,285.17 | $ 13,112.61 | $ 7,850.49 | $ 14,111.61 | $ 10,939.04 | $ 5,989.50 |

Exhibit "A"

BRUCE STEVEN FRANK

SIXTY MONTH

CASH FLOW PROJECTIONS

CASE # 19-15509-BKC-EPK

| | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
| 2 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 |
| 3 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 8,779.64 | $ 9,043.02 | $ 9,043.02 | $ 9,043.02 |
| 4 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,609.00 | $ 10,927.27 | $ 10,927.27 | $ 10,927.27 |
| 5 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,388.64 | $ 19,970.29 | $ 19,970.29 | $ 19,970.29 |
| 6 | | | | | | | | | | | | | | |
| 7 | | $ (9,716.69) | | | $ (9,716.69) | | | $ (9,716.69) | | | $ (9,716.69) | | | $ (10,008.19) |
| 8 | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | |
| 10 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 |
| 11 | $ 884.08 | $ 884.08 | $ 884.08 | $ 884.08 | $ 884.08 | $ 884.08 | $ 884.08 | $ 884.08 | $ 884.08 | $ 884.08 | $ 884.08 | $ 910.60 | $ 910.60 | $ 910.60 |
| 12 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,829.07 | $ 2,913.94 | $ 2,913.94 | $ 2,913.94 |
| 13 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,646.15 | $ 6,757.54 | $ 6,757.54 | $ 6,757.54 |
| 14 | | | | | | | | | | | | | | |
| 15 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,326.13 | $ 1,365.91 | $ 1,365.91 | $ 1,365.91 |
| 16 | $ 159.14 | $ 159.14 | $ 159.14 | $ 159.14 | $ 159.14 | $ 159.14 | $ 159.14 | $ 159.14 | $ 159.14 | $ 159.14 | $ 159.14 | $ 163.91 | $ 163.91 | $ 163.91 |
| 17 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,652.25 | $ 2,731.82 | $ 2,731.82 | $ 2,731.82 |
| 18 | $ 318.27 | $ 318.27 | $ 318.27 | $ 318.27 | $ 318.27 | $ 318.27 | $ 318.27 | $ 318.27 | $ 318.27 | $ 318.27 | $ 318.27 | $ 327.82 | $ 327.82 | $ 327.82 |
| 19 | $ 137.92 | $ 137.92 | $ 137.92 | $ 137.92 | $ 137.92 | $ 137.92 | $ 137.92 | $ 137.92 | $ 137.92 | $ 137.92 | $ 137.92 | $ 142.05 | $ 142.05 | $ 142.05 |
| 20 | $ 84.87 | $ 84.87 | $ 84.87 | $ 84.87 | $ 84.87 | $ 84.87 | $ 84.87 | $ 84.87 | $ 84.87 | $ 84.87 | $ 84.87 | $ 87.42 | $ 87.42 | $ 87.42 |
| 21 | $ 265.23 | $ 265.23 | $ 265.23 | $ 265.23 | $ 265.23 | $ 265.23 | $ 265.23 | $ 265.23 | $ 265.23 | $ 265.23 | $ 265.23 | $ 273.18 | $ 273.18 | $ 273.18 |
| 22 | | | $ - | | | $ - | | | | | | | | |
| 23 | | | | | | | | | | | | | | |
| 24 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 |
| 25 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 |
| 26 | | | | | | | | | | | | | | |
| 27 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 12,814.94 | $ 13,074.65 | $ 13,074.65 | $ 13,074.65 |
| 28 | | | | | | | | | | | | | | |
| 29 | $ 6,573.69 | $ (3,143.00) | $ 6,573.69 | $ 6,573.69 | $ (3,143.00) | $ 6,573.69 | $ 6,573.69 | $ (3,143.00) | $ 6,573.69 | $ 6,573.69 | $ (3,143.00) | $ 6,895.64 | $ 6,895.64 | $ (3,112.55) |
| 30 | | | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | | | |
| 32 | $ 5,989.50 | $ 12,563.19 | $ 9,420.19 | $ 4,470.64 | $ 11,044.33 | $ 7,901.33 | $ 2,951.78 | $ 9,525.47 | $ 6,382.48 | $ 1,432.93 | $ 8,006.62 | $ 4,863.62 | $ 1,799.35 | $ 8,694.99 |
| 33 | | | | | | | | | | | | | | |
| 34 | | | $ 1,563.33 | | | $ 1,563.33 | | | $ 1,563.33 | | | | | |
| 35 | | | | | | | | | | | | | | |
| 36 | | | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 | | |
| 37 | | | | | | | | | | | | | | |
| 38 | $ 12,563.19 | $ 9,420.19 | $ 4,470.64 | $ 11,044.33 | $ 7,901.33 | $ 2,951.78 | $ 9,525.47 | $ 6,382.48 | $ 1,432.93 | $ 8,006.62 | $ 4,863.62 | $ 1,799.35 | $ 8,694.99 | $ 5,582.45 |

Exhibit "A"

BRUCE STEVEN FRANK

SIXTY MONTH
CASH FLOW PROJECTIONS

| | AO | AP | AQ | AR | AS | AT | AU | AV | AW | AX | AY | AZ | BA | BB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
| 2 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 |
| 3 | $ 9,043.02 | $ 9,043.02 | $ 9,043.02 | $ 9,043.02 | $ 9,043.02 | $ 9,043.02 | $ 9,043.02 | $ 9,043.02 | $ 9,043.02 | $ 9,314.32 | $ 9,314.32 | $ 9,314.32 | $ 9,314.32 | $ 9,314.32 |
| 4 | $ 10,927.27 | $ 10,927.27 | $ 10,927.27 | $ 10,927.27 | $ 10,927.27 | $ 10,927.27 | $ 10,927.27 | $ 10,927.27 | $ 10,927.27 | $ 11,255.09 | $ 11,255.09 | $ 11,255.09 | $ 11,255.09 | $ 11,255.09 |
| 5 | $ 19,970.29 | $ 19,970.29 | $ 19,970.29 | $ 19,970.29 | $ 19,970.29 | $ 19,970.29 | $ 19,970.29 | $ 19,970.29 | $ 19,970.29 | $ 20,569.40 | $ 20,569.40 | $ 20,569.40 | $ 20,569.40 | $ 20,569.40 |
| 6 | | | | | | | | | | | | | | |
| 7 | | | $ (10,008.19) | | | $ (10,008.19) | | | $ (10,008.19) | | | $ (10,308.44) | | |
| 8 | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | |
| 10 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 |
| 11 | $ 910.60 | $ 910.60 | $ 910.60 | $ 910.60 | $ 910.60 | $ 910.60 | $ 910.60 | $ 910.60 | $ 910.60 | $ 937.92 | $ 937.92 | $ 937.92 | $ 937.92 | $ 937.92 |
| 12 | $ 2,913.94 | $ 2,913.94 | $ 2,913.94 | $ 2,913.94 | $ 2,913.94 | $ 2,913.94 | $ 2,913.94 | $ 2,913.94 | $ 2,913.94 | $ 3,001.36 | $ 3,001.36 | $ 3,001.36 | $ 3,001.36 | $ 3,001.36 |
| 13 | $ 6,757.54 | $ 6,757.54 | $ 6,757.54 | $ 6,757.54 | $ 6,757.54 | $ 6,757.54 | $ 6,757.54 | $ 6,757.54 | $ 6,757.54 | $ 6,872.28 | $ 6,872.28 | $ 6,872.28 | $ 6,872.28 | $ 6,872.28 |
| 14 | | | | | | | | | | | | | | |
| 15 | $ 1,365.91 | $ 1,365.91 | $ 1,365.91 | $ 1,365.91 | $ 1,365.91 | $ 1,365.91 | $ 1,365.91 | $ 1,365.91 | $ 1,365.91 | $ 1,406.89 | $ 1,406.89 | $ 1,406.89 | $ 1,406.89 | $ 1,406.89 |
| 16 | $ 163.91 | $ 163.91 | $ 163.91 | $ 163.91 | $ 163.91 | $ 163.91 | $ 163.91 | $ 163.91 | $ 163.91 | $ 168.83 | $ 168.83 | $ 168.83 | $ 168.83 | $ 168.83 |
| 17 | $ 2,731.82 | $ 2,731.82 | $ 2,731.82 | $ 2,731.82 | $ 2,731.82 | $ 2,731.82 | $ 2,731.82 | $ 2,731.82 | $ 2,731.82 | $ 2,813.77 | $ 2,813.77 | $ 2,813.77 | $ 2,813.77 | $ 2,813.77 |
| 18 | $ 327.82 | $ 327.82 | $ 327.82 | $ 327.82 | $ 327.82 | $ 327.82 | $ 327.82 | $ 327.82 | $ 327.82 | $ 337.65 | $ 337.65 | $ 337.65 | $ 337.65 | $ 337.65 |
| 19 | $ 142.05 | $ 142.05 | $ 142.05 | $ 142.05 | $ 142.05 | $ 142.05 | $ 142.05 | $ 142.05 | $ 142.05 | $ 146.32 | $ 146.32 | $ 146.32 | $ 146.32 | $ 146.32 |
| 20 | $ 87.42 | $ 87.42 | $ 87.42 | $ 87.42 | $ 87.42 | $ 87.42 | $ 87.42 | $ 87.42 | $ 87.42 | $ 90.04 | $ 90.04 | $ 90.04 | $ 90.04 | $ 90.04 |
| 21 | $ 273.18 | $ 273.18 | $ 273.18 | $ 273.18 | $ 273.18 | $ 273.18 | $ 273.18 | $ 273.18 | $ 273.18 | $ 281.38 | $ 281.38 | $ 281.38 | $ 281.38 | $ 281.38 |
| 22 | $ - | | | $ - | | | | | | | | | $ - | |
| 23 | | | | | | | | | | | | | | |
| 24 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 |
| 25 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 |
| 26 | | | | | | | | | | | | | | |
| 27 | $ 13,074.65 | $ 13,074.65 | $ 13,074.65 | $ 13,074.65 | $ 13,074.65 | $ 13,074.65 | $ 13,074.65 | $ 13,074.65 | $ 13,074.65 | $ 13,342.15 | $ 13,342.15 | $ 13,342.15 | $ 13,342.15 | $ 13,342.15 |
| 28 | | | | | | | | | | | | | | |
| 29 | $ 6,895.64 | $ 6,895.64 | $ (3,112.55) | $ 6,895.64 | $ 6,895.64 | $ (3,112.55) | $ 6,895.64 | $ 6,895.64 | $ (3,112.55) | $ 7,227.25 | $ 7,227.25 | $ (3,081.18) | $ 7,227.25 | $ 7,227.25 |
| 30 | | | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | | | |
| 32 | $ 5,582.45 | $ 2,518.18 | $ 9,413.82 | $ 6,301.27 | $ 3,237.00 | $ 10,132.64 | $ 7,020.10 | $ 3,955.83 | $ 10,851.47 | $ 7,738.92 | $ 5,006.26 | $ 12,233.51 | $ 9,152.33 | $ 6,419.67 |
| 33 | | | | | | | | | | | | | | |
| 34 | | | | | | | | | | | | | | |
| 35 | | | | | | | | | | | | | | |
| 36 | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 | | | $ 9,959.91 | |
| 37 | | | | | | | | | | | | | | |
| 38 | $ 2,518.18 | $ 9,413.82 | $ 6,301.27 | $ 3,237.00 | $ 10,132.64 | $ 7,020.10 | $ 3,955.83 | $ 10,851.47 | $ 7,738.92 | $ 5,006.26 | $ 12,233.51 | $ 9,152.33 | $ 6,419.67 | $ 13,646.92 |

Exhibit "A"

BRUCE STEVEN FRANK

CASE # 19-15509-BKC-EPK

SIXTY MONTH
CASH FLOW PROJECTIONS

| | BC | BD | BE | BF | BG | BH | BI | BJ |
|---|---|---|---|---|---|---|---|---|
| 1 | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | TOTALS |
| 2 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | |
| 3 | $ 9,314.32 | $ 9,314.32 | $ 9,314.32 | $ 9,314.32 | $ 9,314.32 | $ 9,314.32 | $ 9,314.32 | $ 527,238.49 |
| 4 | $ 11,255.09 | $ 11,255.09 | $ 11,255.09 | $ 11,255.09 | $ 11,255.09 | $ 11,255.09 | $ 11,255.09 | $ 637,096.30 |
| 5 | $ 20,569.40 | $ 20,569.40 | $ 20,569.40 | $ 20,569.40 | $ 20,569.40 | $ 20,569.40 | $ 20,569.40 | $ 1,164,334.78 |
| 6 | | | | | | | | |
| 7 | $ (10,308.44) | | | $ (10,308.44) | | | $ (10,308.44) | $ (176,227.98) |
| 8 | | | | | | | | $ 46,494.00 |
| 9 | | | | | | | | |
| 10 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 2,933.00 | $ 175,980.00 |
| 11 | $ 937.92 | $ 937.92 | $ 937.92 | $ 937.92 | $ 937.92 | $ 937.92 | $ 937.92 | $ 53,091.15 |
| 12 | $ 3,001.36 | $ 3,001.36 | $ 3,001.36 | $ 3,001.36 | $ 3,001.36 | $ 3,001.36 | $ 3,001.36 | $ 169,892.56 |
| 13 | $ 6,872.28 | $ 6,872.28 | $ 6,872.28 | $ 6,872.28 | $ 6,872.28 | $ 6,872.28 | $ 6,872.28 | $ 398,963.70 |
| 14 | | | | | | | | |
| 15 | $ 1,406.89 | $ 1,406.89 | $ 1,406.89 | $ 1,406.89 | $ 1,406.89 | $ 1,406.89 | $ 1,406.89 | $ 79,637.04 |
| 16 | $ 168.83 | $ 168.83 | $ 168.83 | $ 168.83 | $ 168.83 | $ 168.83 | $ 168.83 | $ 9,556.44 |
| 17 | $ 2,813.77 | $ 2,813.77 | $ 2,813.77 | $ 2,813.77 | $ 2,813.77 | $ 2,813.77 | $ 2,813.77 | $ 159,274.07 |
| 18 | $ 337.65 | $ 337.65 | $ 337.65 | $ 337.65 | $ 337.65 | $ 337.65 | $ 337.65 | $ 19,112.89 |
| 19 | $ 146.32 | $ 146.32 | $ 146.32 | $ 146.32 | $ 146.32 | $ 146.32 | $ 146.32 | $ 8,282.25 |
| 20 | $ 90.04 | $ 90.04 | $ 90.04 | $ 90.04 | $ 90.04 | $ 90.04 | $ 90.04 | $ 5,096.77 |
| 21 | $ 281.38 | $ 281.38 | $ 281.38 | $ 281.38 | $ 281.38 | $ 281.38 | $ 281.38 | $ 15,927.41 |
| 22 | | $ - | | | | | | $ 1,300.00 |
| 23 | | | | | | | | $ 90,000.00 |
| 24 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 23,500.00 |
| 25 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 725.00 | $ 43,500.00 |
| 26 | | | | | | | | |
| 27 | $ 13,342.15 | $ 13,342.15 | $ 13,342.15 | $ 13,342.15 | $ 13,342.15 | $ 13,342.15 | $ 13,342.15 | $ 854,150.58 |
| 28 | | | | | | | | |
| 29 | $ (3,081.18) | $ 7,227.25 | $ 7,227.25 | $ (3,081.18) | $ 7,227.25 | $ 7,227.25 | $ (3,081.18) | $ 486,412.19 |
| 30 | | | | | | | | |
| 31 | | | | | | | | |
| 32 | $ 13,646.92 | $ 10,565.74 | $ 7,833.08 | $ 15,060.33 | $ 11,979.14 | $ 9,246.40 | $ 16,473.65 | $ 101,702.20 |
| 33 | | | | | | | | |
| 34 | | | | | | | | $ 18,759.96 |
| 35 | | | | | | | | $ 50,000.00 |
| 36 | | $ 9,959.91 | | | $ 9,960.00 | | | $ 200,000.00 |
| 37 | | | | | | | | |
| 38 | $ 10,565.74 | $ 7,833.08 | $ 15,060.33 | $ 11,979.14 | $ 9,246.40 | $ 16,473.65 | $ 13,392.46 | $ 13,392.46 |

Exhibit "A"

BRUCE STEVEN FRANK
BKC CASE # 19-15509-BKC-EPK

BUSINESS PROJECTION
BRUCE STEVEN FRANK
FIVE YEARS FROM CONFIRMATION

| | 2019 P & L | 2020 | 2021 | 2022 | 2023 | 2024 | |
|---|---|---|---|---|---|---|---|
| Net Service Fees | $ 286,681.21 | $ 295,281.65 | $ 304,140.10 | $ 313,264.30 | $ 322,662.23 | $ 332,342.09 | |
| | | | | | | | |
| | | | | | | | |
| Total Income | 286,681.21 | $ 295,281.65 | $ 304,140.10 | $ 313,264.30 | $ 322,662.23 | $ 332,342.09 | |
| | | | | | | | |
| Cost of Goods Sold | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | | | | |
| | | | | | | | |
| Gross Profit | $ 286,681.21 | $ 295,281.65 | $ 304,140.10 | $ 313,264.30 | $ 322,662.23 | $ 332,342.09 | |
| | - | | | | | | |
| Advertising | $ 357.71 | $ 442.13 | $ 455.39 | $ 469.06 | $ 483.13 | $ 497.62 | |
| Automobile Expense | $ 12,110.73 | $ 14,968.86 | $ 15,417.93 | $ 15,880.47 | $ 16,356.88 | $ 16,847.59 | |
| Bank Charges | $ 489.89 | $ 605.50 | $ 623.67 | $ 642.38 | $ 661.65 | $ 681.50 | |
| Charitable Contributions | $ 1,200.00 | $ 1,483.20 | $ 1,527.70 | $ 1,573.53 | $ 1,620.73 | $ 1,669.35 | |
| Dues and Subscriptions | $ 407.71 | $ 503.93 | $ 519.05 | $ 534.62 | $ 550.66 | $ 567.18 | |
| Insurances | $ 14,312.50 | $ 17,690.25 | $ 18,220.96 | $ 18,767.59 | $ 19,330.61 | $ 19,910.53 | |
| Interest Expense | $ 3,634.06 | $ 4,491.70 | $ 4,626.45 | $ 4,765.24 | $ 4,908.20 | $ 5,055.45 | |
| IT Costs | $ 221.82 | $ 274.17 | $ 282.39 | $ 290.87 | $ 299.59 | $ 308.58 | |
| Licenses and Permits | $ 478.45 | $ 591.36 | $ 609.11 | $ 627.38 | $ 646.20 | $ 665.59 | |
| Meals | $ 9,590.93 | $ 11,854.39 | $ 12,210.02 | $ 12,576.32 | $ 12,953.61 | $ 13,342.22 | |
| Postage | $ 86.16 | $ 106.49 | $ 109.69 | $ 112.98 | $ 116.37 | $ 119.86 | |
| Professional Fees | $ 10,025.00 | $ 12,390.90 | $ 12,762.63 | $ 13,145.51 | $ 13,539.87 | $ 13,946.07 | |
| Rent | $ 3,049.90 | $ - | $ - | $ - | $ - | $ - | gave up office |
| Salaries and Wages | $ 36,500.00 | $ 120,000.00 | $ 123,600.00 | $ 127,308.00 | $ 131,127.24 | $ 135,061.06 | |
| Telephone Expense | $ 3,397.61 | $ 4,199.45 | $ 4,325.43 | $ 4,455.19 | $ 4,588.85 | $ 4,726.51 | |
| Travel | $ 5,154.96 | $ 6,371.53 | $ 6,562.68 | $ 6,759.56 | $ 6,962.34 | $ 7,171.21 | |
| Total Deductions | $ 101,017.43 | $ 195,973.87 | $ 201,853.08 | $ 207,908.68 | $ 214,145.94 | $ 220,570.31 | |
| | | | | | | | |
| | | | | | | | |
| Ordinary Business Income | $ 185,663.78 | $ 99,307.78 | $ 102,287.01 | $ 105,355.62 | $ 108,516.29 | $ 111,771.78 | |
| | | | | | | | |
| Monthly Available for Distribution | $ 15,471.98 | $ 8,275.65 | $ 8,523.92 | $ 8,779.64 | $ 9,043.02 | $ 9,314.32 | |

Exhibit "A"

# DINNALL FYNE & COMPANY INC.
## ACCOUNTING AND TAX SERVICES

1515 N. University Drive
Ste. 101
Coral Springs, FL 33071
954-340-5696(Phone)
afyne@dinnallfyne.com

April 20, 2020

For the benefit of:
Bruce S. Frank

Re: Assumptions for Attached 60 Month Projections –Case # 19-15509-BKC-EPK

Dear Mr. Frank:

Please find attached the cash flow forecast of your personal finances over the sixty months beginning upon the confirmation of your Bankruptcy Plan.

The line items are as follows:

### INCOME SOURCES
**Distributions from Frank Consulting Services LLC**
Total household income is used in this projection. Frank Consulting Services LLC projected income and expenses are shown on the page titled Business Projection. We have compiled the financials for 2019, its first year of operation and this is reflected in the column labeled 2019 P & L. We have made changes to some expenses which will not be recurring like rent, as the office is no longer used, and the Debtor works from his home.

The expenses reflect the items paid for through the business. An item to note is one car payment for the owner of Frank Consulting Services being paid through the company. There is a separate car expense for the Debtors auto in the sixty-month projection. Another item to note is a salary being paid to the Debtor, which is shown as a deduction on this sheet, but reflected as income on the projection. This amount was not paid consistently through 2019, but we were told by management that the debtor will receive ten thousand per month as a consulting fee.

The net income amounts were divided by twelve to reflect the amount of distribution available on a monthly basis.

Earnings and expenses were increased by a three per cent inflationary factor annually.

**Management Fee Bruce Frank**
These amounts are directly from the business projection.

Bruce S. Frank                                 Case # 19-15509-BKC-EPK

Page 1

Exhibit "A"

**Estimated Taxes**

The Debtor and his spouse are due a refund from taxes for 2018 which is being held by the IRS pending the conclusion of this case.  That refund is shown as being received in the fourth month following confirmation.

No federal income tax will be due in the first reporting period for 2020 as the Debtor has a large Net Operating Loss Carryover (N.O.L.) derived from business losses in prior yearsI am reflecting an amount due from 2020 representing the Self Employment tax from the Debtors Management fees which are not affected by any N.O.L.  There are no credits available to mitigate this tax.

The N.O.L. carried over to the next years will be lost as you must apply any cancellation of debt income against any future tax benefits.

All subsequent years show taxes both Federal and Self employment being paid on a quarterly basis at current tax rates as is required by the Internal Revenue Service.

**<u>EXPENSES</u>**

The amounts used are averages based on the representations by the Debtor and his spouse.  I also used the MOR's as a guide.   Vehicle expenses include the current cost of the Debtors vehicle.
All appear to be reasonable for the size of the home and vehicle driven.

**Trustee Fees**

The amount used is the expected liability given the historical dollar amount of transactions disbursed from the DIP account.

**Professional Fees**

The amount used is a projected number of fees for Legal and Accounting Services for the case.
Fee applications will be submitted prior to confirmation of the plan.

Bruce S. Frank                                                              Case # 19-15509-BKC-EPK

Page 2

**Creditor Payments**

**The State of New Jersey**

Most of the claim from New Jersey will be paid as part of the unsecured payment.  What is left and not disputable will be amortized with sixty months from the date of the initial petition at the current rate of interest prescribed by the State.

**Class 6**
**Investors Bank**
The payment shown in month five is the amount that has been negotiated and has been incorporated into the plan.

**Class 7**
The amount used for Class 7 General Unsecured Creditors is the projected disposable income of the Debtor, during the five-year period paid quarterly to the unsecured creditors.

Respectfully Submitted,

/s/ Alan Fyne

Alan Fyne

Cc: Zach Shelomith

Bruce S. Frank                                                              Case # 19-15509-BKC-EPK

Page 3

# EXHIBIT "B"

# LIQUIDATION ANALYSIS

| Exhibit B - Liquidation Analysis | | |
|---|---|---|
| | | |
| **Debtor's Estimated Liquidation Value of Assets** | | |
| | | |
| **Assets:** | **Value** | |
| | | |
| | | |
| Net Proceeds from Sale of 392 Eagle Dr, Jupiter, FL 33477 | $0.00 | |
| Commission from Sale of Real Property | $49,200.00 | Amount is being provided to creditors as per the Plan |
| Non-Exempt New Jersey Bankruptcy Claim | $0.00 | Amount is unknown; being provided to creditors as per the Plan |
| Anticipated Federal Income Tax Refund(s) | $0.00 | Amount is unknown; being provided to creditors as per the Plan |
| 50% interest in 2014 Bentley Continental W12 | $52,500.00 | |
| 50% interest in 2015 Land Rover | $38,600.00 | |
| 50% interest in 2015 Audi A7 | $16,700.00 | |
| 50% interest in Golf Cart | $2,000.00 | |
| Personal and Household Property | $18,292.50 | |
| Cash in Debtor's DIP Account | $0.00 | Assuming any amount(s) are used to pay Allowed Admin. Exp. Claim(s) |
| Florida Prepaid College Savings Plans | $21,076.55 | |
| Cash Surrender Values of Life Insurance Policies | $141,590.99 | |
| 17.5% interest in Superplay Development Group, LLC | $0.00 | Allegedly fully secured by Larsen Capital, LLC |
| 22.5% interest in Superplay, LLC | $0.00 | Allegedly fully secured by Larsen Capital, LLC |
| Claim(s) against Larsen Capital, LLC | $0.00 | Amount is unknown; being provided to creditors as per the Plan |
| Interest(s) in Other Corporate Entities | $0.00 | |
| Avoidance Actions | $0.00 | |
| | | |
| **Total Assets at Liquidation Value** | $339,960.04 | |
| | | |
| **Less:** | | |
| | | |
| Lien Against 2014 Bentley Continental W12 | $52,500.00 | |
| Lien Against 2015 Land Rover | $38,600.00 | |
| Lien Against 2015 Audi A7 | $16,700.00 | |
| Lien Against Stock Interest(s) in Superplay Development Group, LLC and Superplay, LLC | $0.00 | Fully secured (see Debtor's Accountant letter attached regarding value(s)) |
| Exempt New Jersey Bankruptcy Claim | $0.00 | |
| Personal Property Exemption | $1,000.00 | |
| Exemption in Florida Prepaid College Savings Plans | $21,076.55 | |
| Exemption in Cash Surrender Values of Life Insurance Policies | $141,590.99 | |
| Est. Chapter 7 admin. expenses | $25,000.00 | |
| Est. Chapter 11 admin. expenses | $150,000.00 | |
| | | |
| (1) Total Non-Exempt Assets: | $68,492.50 | |
| (2) Balance for unsecured claims: | $0.00 | |
| (3) Total unsecured claims: | $25,503,163.78 | |
| | | |
| | | |
| **Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation:** | | **0.0000%** |
| | | |
| **Percentage of Claims Which Unsecured Creditors Would Receive or Retain under the Plan:** | | **0.7842%** |

# DINNALL  FYNE & COMPANY INC.
## ACCOUNTING AND TAX SERVICES

1515 N. University Drive
Ste. 114
Coral Springs, FL  33071
954-340-5696(Phone)
afyne@dinnallfyne.com

April 21, 2020

To Whom It May Concern,
> RE:    Valuation of Superplay LLC and Superplay Development Group LLC
> Bruce S. Frank Bankruptcy Estate

I have been asked by my client, Bruce S. Frank, to help with the valuation of two entities in which the debtor holds a minority interest.

Those entities are: (a) Superplay Development Group, LLC ("Superplay Development") (whereby Mr. Frank owns 17.5% of the common shares of Superplay Development); and (b) Superplay, LLC ("Superplay") (whereby Mr. Frank owns 22.5% of the common shares of Superplay).  (Superplay Development and Superplay shall hereinafter be defined as the "Superplay Entities").

Please note I am not licensed or professionally trained to prepare valuations.  You cannot rely on this opinion.  I have been in business as an accountant for close to forty years though and have seen my share of valuations and understand the methods.

I am using a common-sense method to value Mr. Frank's share of the Superplay Entities.

I have reviewed the financial statements from 2019 as of September and have also been given a copy of the 2019 tax return for the operating company, Superplay.

These entities have previously been valued by a licensed appraiser for the holder of the first mortgage, Malvern Federal Savings Bank.  That valuation was prepared as of April 24, 2018 and reflected a combined value of $7,260,000.00.

The Entities have encumbrances at 12/31/19 of $5,531,615.15 on Superplay Development.   In addition to the encumbrances, there is a preferred distribution of $650,000.00 to the other shareholder, which has priority before any assets would be split with common equity partners.

The net value of the assets after encumbrances and the preferred distribution is $1,078,384.85 based upon the appraisal at September 2018.  As stated above, Mr. Frank holds a minority share in the Superplay Entities.

Given the COVID-19 pandemic, the liquidated share of Mr. Frank's interest in the Superplay Entities is nominal and of no value to any third party.

They are closed and will suffer losses in 2020.    That is based on facts, figures, tax returns and most importantly, common-sense, but does not reflect the future value (as post-COVID-19, this needs to be addressed).

The real value of the Superplay Entities can only be determined by a purchaser, if any, as they are primarily based on the goodwill and future increases of goodwill not reflected in the financial statements.  The sales of the operating company rose 61% from 2018 to 2019.  That is an excellent indicator of future performance.

Sincerely,

/s/ Alan Fyne

Alan Fyne
Dinnall Fyne & Company Inc.

Exhibit "B"